## George Forbes *vs.* James Forbes.—*June,* 1847.

A trustee filed a bill against all his *c. q. t.* for a settlement of the trust estate. Whilst pending, propositions of compromise were made; and that the parties might be fully informed of their rights, the books of the trust were subjected to examination; accounts were examined by the *c. q. t's* solicitors and some of the *c. q. t.* and a skilful accountant, at the request of the trustee's solicitor; upon that examination, the solicitor of the *c. q. t.* advised a compromise, which was effected, and carried into execution. Every facility was furnished for the examination of the accounts. No evidence of books or accounts kept back. The solicitors of the parties were fully competent to determine what was due. This led to the execution of a release, by the complainant to the trustee, while under age. Twelve days after he came of age, and about fourteen months after the execution of the *first* he executed a *second* release. *Held,* that the *second* release was based on the *first;* was not subject to the imputation of undue influence, and was made with knowledge of his rights by the complainant, and therefore valid.

A release executed by a ward, or *cestui que trust,* shortly after he attains age, without the necessary accounts or information from which a judgment may be formed of the condition of the estate, would not meet the favor of a court of equity.

The determination of the question, whether necessary information was imparted to a ward or *cestui que trust* to enable him or his advisers to form a judgment of the condition of the estate, and decide whether such a release is valid,

render it necessary to examine into the circumstances connected with it—the conduct and acts of the parties anterior to its execution, though occurring during the minority of the ward or *c. q. t.*

Where two releases—one before arriving at age, and another within twelve days after full age, were executed—if at the time of the *first* release, the necessary information was imparted and the examination of friends and advisers of the *c. q. t.* as to the state and condition of the trust fund was had, these must be considered as the operating causes for the *second* release at the time of its execution.

After accounts between trustee and *c. q. trusts* have been examined by the parties to a bill filed for that object by the trustee, and a release executed, where there is no proof of concealment, upon a bill filed to impeach such release, after a lapse of ten years from its execution, the trustee will not be required to produce actual proof of detailed information of what the records and accounts displayed.

Upon such a bill to impeach the release, the court will presume that the *c. q. t.* being a party to the *first* bill filed by the trustee as aforesaid, had knowledge of every thing he was entitled to know, and proper to be known, for a right decision in regard to his release; and that therefore a dismissal of the bill upon the agreement of the *c. q. t.* several years after, with his trustee, for such dismissal, is such a recognition of his release, as would amount to a confirmation of it, considering it merely as voidable.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 14th June, 1841, by the appellee, and alleged that a certain *Elizabeth Forbes* was seized and possessed of considerable real and personal estate, and being about to be married, a deed or marital settlement was executed on the 8th June, 1807, between her intended husband of the first part, the said *E. F.* of the second part; a certain *Thomas Marshall* and *John Forbes* of the third part; and a certain *James, John,* (above named) *James Forbes Sothoron* and *Rebecca A. M. Sothoron* his wife, *James Forbes* and *Elizabeth Forbes,* all of them except *J. F. S.,* children of the first, *E. F.,* above named, of the fourth part; and therein it was set forth that a marriage was agreed upon, and intended to be shortly had, and solemnized between *Samuel Bond* and *E. F.,* first above named; and upon the treaty of said marriage it was agreed by, and between the said *S. B.,* and the said *E. F.,* that all the estate, as well real as personal, of, or belonging to the said *E. F.,* first above named, either in law or in equity, in

possession, remainder or reversion, should be conveyed, settled and assured by the said *E. F.*, unto the before mentioned *Thomas Marshall* and *John Forbes*, and to the survivor of them, and the heirs, executors and assigns of such survivor to the uses, and upon the trusts, &c. &c. That the said marriage was solemnized, and the trustees entered upon the execution of their trust: that afterwards, in or about the year 1820, the said *E. B.*, the first named, died, and the before mentioned *Samuel Bond* is long since deceased; that the estate of the said *E. B.* was considerable; consisting of not only of lands, negroes, stock, and plantation utensils, but of choses in action debts to a very large amount,—although your orator is unable to ascertain the amount of them, or the individuals from whom they were due. That the said *Thomas Marshall* and *John Forbes* took upon them the trust aforesaid, and collected moneys due to said *E. B.*, to a very large amount, of which they have never rendered an account; and of the debts due to said *Elizabeth Bond* as aforesaid, a very large amount if not collected, was lost by the gross negligence and improper indulgence of the said trustees. That the said *John Forbes* died in or about the year 1818, utterly insolvent, and there has been no administration upon his estate. That the said *Thomas Marshall* suffered the said *John Forbes* to waste and convert to his own private uses much of the money and other property of the said estates, and is answerable to those for whose benefit the trust was undertaken, for the amounts so wasted and misapplied, he having had a knowledge at the time of such misapplication, and taking no steps to prevent it, or to make the said *John Forbes* answerable for it. That the said *Elizabeth* (sometimes called *Eliza*) *Forbes*, daughter of said *E. B.*, intermarried with a certain *Horatio C. McElderry;* and subsequently to such intermarriage, and in order to gratify some of the *cestui que trusts*, but without the consent of your orator, the said *Thomas Marshall* did on or about the 29th March, 1820, execute to the before mentioned *Horatio C. McElderry* and *George Forbes*, a deed of which Exhibit B. herewith filed is a copy. That the said *E. B.* is dead, and died without

having made a last will and testament, or any other instrument of writing, witnessed by two or more credible or competent witnesses, directing and appointing in what manner, or in what shares, portions and amounts, the said property shall go to each of her several children aforesaid; and not having executed the power reserved to her by the deed of marriage settlement, the said estates held in trust as aforesaid, passed to her several children, named as aforesaid; also that said *R. A. M. Sothoron* is dead, leaving her husband *James F. Sothoron,* and her only children *John H. Sothoron* and *Elizabeth,* who has since intermarried with a certain *Samuel C. Webster.* That the said *James Forbes* was the father of your orator, and a certain *Elizabeth,* who has intermarried with a certain *Robert Beale;* that said *James Forbes* died intestate, and no administration has been granted upon his estate, by reason of which your orator and the said *Elizabeth Beale* as the only children of the said *James Forbes* are entitled to a share of said trust estate. That said *Horatio C. McElderry* is also dead, and his widow aforesaid has since died after intermarriage with a certain *William Plater,* who became the executor of the said *Horatio C. McElderry;* that the said *James Forbes* is dead, intestate, and without issue, by reason of which her brothers and sisters aforesaid become entitled to her part of said estate, and the several defendants hereinafter named, being in the possession of said estate, are her executors. That the said *Thomas Marshall* since the execution of the deed aforesaid to *Horatio C. McElderry* and *John Forbes* has died, leaving three sons, to wit: *Thomas H. Marshall, Henry Marshall* and *Richard H. Marshall,* to whom a large real estate has descended from their father, chargeable with the debts of the said *Thomas Marshall* if his personal estate should prove insufficient, also that letters of administration upon the personal estate of the said *Thomas Marshall* have in due form of law been granted to the before named *T. H. M.* and *R. H. M.,* who have possessed themselves of the assets of the deceased. That no account has ever been rendered of the said trust estate, either to your orator, or to any other person interested.

That at the time of the execution of said deeds he was an infant, and did not come of age until about the 27th May, 1831. That the above named *George Forbes* was appointed his guardian; but of what estate, in virtue of his said guardianship he possessed himself, your orator has been unable to ascertain; that during the infancy of your orator, or possibly very soon after the said guardianship ceased, the said *G. F.*, without rendering to your orator any account of the original trust aforesaid, or of his guardianship, prevailed upon your orator to execute a deed purporting to exonerate the said *G. F.*, the representatives of the before named *T. M.* and *H. C. McE.*, of any demand, claim or right which your orator had, or could have against them; what disposition has been made of said instrument of writing your orator is unable to say; but he charges that the same, if in existence, ought to be declared null and void, being obtained by a guardian from his ward, by the exercise of undue influence. Your orator also charges that the same was obtained by fraud; the said *G. F.*, not only concealed from your orator the amount of the estate to which he was entitled; but the books which were designed to shew the state of the trust fund had been altered, and thereby the claim of your orator was very much diminished. Prayer, that any such release, or paper if insisted upon, shall be declared fraudulent, and set aside; and that an account of the trust fund be taken precisely, as if none such had been executed. For an account, subpœna, &c.

The several deeds, &c. on which the bill of complaint was based, were filed therewith.

The defendants answered the bill, and among others the said *George Forbes*, the substance of whose answer is sufficiently stated in the opinion of this court.

A great variety of proof was also taken, the character and effect of which are also stated in that opinion.

Among other documentary evidence, the following signed by the complainant were admitted to be proved. These are the releases sought to be impeached by the bill of the appellee.

"Know all men by these presents, that whereas *George Forbes* of *Prince George's County*, has on this day conveyed to me an undivided moiety in the tracts of land in the said deed mentioned, which I have received in full satisfaction of all claims and demands which I claim to have against the heirs, executors and administrators of *Thomas Marshall* and *Horatio C. McElderry* and the said *George Forbes*, or against any property, real, personal or mixed which the said *George Forbes* claims to hold in any way whatever. Now know ye, that I, *James Forbes*, do hereby in consideration of the premises, remise, release and quit claim all and every demand, claim or right which I now have or can hereafter have in law or equity, of every nature or kind against the heirs, executors or administrators, either of *Thomas Marshall*, or of *Horatio C. McElderry*, or against the said *George Forbes*, or against any property, real, personal or mixed, which the said *George Forbes* claims to hold in any way. And I hereby promise to confirm this relinquishment when I shall have arrived at lawful age.

Witness my hand and seal this 30th of April, 1830.

Witness, JAMES BRAWNER.          JAMES FORBES, [*Seal.*]"

"Whereas, *Elizabeth Forbes*, widow of the late *John Forbes*, before her intermarriage with the late *Samuel Bond*, conveyed all her property, real, personal, and mixed, unto her son *John Forbes*, and her brother *Thomas Marshall*, in trust for the purposes and for the uses therein mentioned, and whereas the said *John Forbes* died before the said *Thomas Marshall*, and whereas the said *Thomas Marshall*, by deed duly executed and recorded in his life, conveyed the said trust property to a certain *Horatio McElderry* and *George Forbes*, which said *Horatio McElderry* is since dead, and whereas I, *James Forbes*, claiming by and in virtue of the said deed as aforesaid, executed by the said *Elizabeth Forbes*, an interest in the said trust property aforesaid, have agreed and compromised for all my interest, claim and demand arising by virtue of, or under the said deed of trust so as aforesaid executed by the said *Elizabeth Forbes*, with the said *George Forbes* claiming to act as substituted and surviving trustee as aforesaid. Now know

ye, that I, *James Forbes* of *Prince George's County*, for and in consideration of the premises, and for the sum of ten dollars to me in hand paid by the said *George Forbes* of, &c., have remised, released and forever discharged, and by these presents do remise, release and forever discharge the said *George Forbes, Hanson Marshall* and *Henry Marshall,* heirs and representatives of the said *Thomas Marshall,* and *Hugh McElderry,* and *George Forbes,* executors of the said *Horatio McElderry,* of and from all, and all manner of action or actions, cause or causes of action, reckonings, claims and demands whatsoever, either in law or equity, arising under, or by virtue of a claim or demand by me, under colour, pretence or virtue of the said deed so as aforesaid executed by the said *Elizabeth Forbes,* or as being one of the grandchildren of the said *Elizabeth.* And I do hereby further renounce and release every manner of claim or demand whatsoever, to the real or personal property in the said deed by the said *Elizabeth,* executed as aforesaid, or acquired by the said trustees, or any, or either of them. In witness whereof, I have hereunto set my hand and seal, on this eighth day of June, 1831.

JAMES FORBES, [*Seal.*]"

" Received of my uncle, *George Forbes,* nineteen dollars and forty-seven cents, which amount is due *Mrs. Dent* for board whilst I was at *Charlotte Hall,* and which my uncle promised me to pay on our final settlement some time since.

*February 7th,* 1834.                    JAMES FORBES."

After all the proof was taken, the Chancellor (BLAND) on the 19th February, 1845, decreed that the said instrument of writing, signed and sealed by the plaintiff, *James Forbes,* bearing date on the 30th April, 1830: and the instrument of writing signed and sealed by the plaintiff, *James Forbes,* bearing date on 8th June, 1831: and the instrument of writing signed by the plaintiff, *James Forbes,* bearing date on the 7th February, 1834; together with all other instruments of writing in the proceedings mentioned, in so far as they, or any of them, purport to be, or may, by inference or construction, be taken to be a release or discharge from the plaintiff, *James Forbes,*

unto the defendant, *George Forbes*, of any rights or claims of the plaintiff, as set forth in his bill of complaint, be, and the same are hereby each and all of them declared to be fraudulent and void, as against the plaintiff, *James Forbes*. And that the defendant, *George Forbes*, account with the plaintiff of, and concerning the matters and things, rights and claims, of the plaintiff, as set forth in his said bill of complaint; and this case is hereby referred to the auditor, with directions to state an account accordingly, &c.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS SPENCE and MARTIN, J.

By RANDALL and REVERDY JOHNSON for the appellant, who contended:

1st. That the compromise between the appellant and *Marshall*, on the one side, and the appellee on the other, made on the 30th April, 1830, and during the minority of *James Forbes*, was entered into by him, freely, advisedly, and for his own benefit, and when he was in possession of full knowledge of his rights; and that the release he then executed was merely voidable.

2d. That the repeated confirmations of this compromise, after the appellee had arrived at age, viz:

1. By his second release, executed 8th of June, 1831.

2. By the deed which he received with *Beale and wife*, given by the appellant, dated 18th July, 1831.

3. By the deed, executed by himself, and *Beale and wife*, conveying the land, which was part of the consideration of the compromise, to the *Gardners*, the purchasers thereof; executed on the 20th of July, 1831.

4. By appellee's receipt to appellant, executed on the 7th February, 1834,—render this compromise as valid and binding, as if it never had been voidable.

3d. That the compromise made by the appellant with the appellee, was liberal and fair, and taking into the account the amount he afterwards received from the representatives of

*Thomas Marshall,* he, the appellee, has obtained his full share, if not more, of the said estate.

4th. That the averments of the bill are insufficient to entitle the complainant, appellee, to any relief, or account, against *George Forbes,* as guardian or otherwise.

5th. That the suit having been compromised, as against the representatives of *Thomas Marshall,* the defendants, and the bill dismissed as to them, the complainant can have no relief or account, against the appellant.

6th. That lapse of time, and the statute of limitations, as relied on by *George Forbes,* is a bar to any recovery by the complainant, in this suit.

They cited:—*13 Mass.* 239. *Zouch vs. Parsons, 3 Burr.* 1794. *Whitney et al. vs. Dutch et al.* 14 *Mass.* 462, 457, 461. *Boston Bank vs. Chamberlin,* 15 *Mass.* 220. *Lowe vs. Gist, 5 H. & John.* 106, *no. a. Tucker et al. vs. Moreland,* 10 *Peters,* 71. *Roberts vs. Wiggin,* 1 *New Hamp.* 73. *Bing. on Infancy,* 13, 14. 1 *Sto. Eq. sec.* 320. *Cheshire vs. Barrett,* 4 *McCord,* 241. *Boynton vs. Dyer,* 18 *Pick.* 1. *Murray vs. Shanklin,* 4 *Dev. & Batt.* 289. *Martin vs. Byrom, Dudley Rep.* 203. *Kirby vs. Taylor,* 6 *John. C. R.* 242. *Chambers,* Ordinary *vs. Wherry,* 1 *Bayly,* 31. *Lawson vs. Lovejoy,* 8 *Greenleaf,* 405. *Bigelow vs. Kinney, 3 Vermont,* 353. 1 *Greenleaf,* 11. *Deason vs. Boyd & O'Hara,* 1 *Dana,* 45. *Boody vs. McKenny,* 23 *Maine,* 517. *Haywood's N. C. Rep.* 104, 106. *Kline vs. Bebee,* 6 *Conn.* 494. *McPherson on Infants,* 41 *Law Lib.* 340. *Bobo vs. Hansell,* 2 *Bayly,* 114. *Wright vs. Steele, 2 New Hamp.* 51. *Chadbourn vs. Watts,* 10 *Mass.* 127. *Ridenour vs. Keller,* 2 *Gill,* 134. *Griffin vs. Griffin,* 1 *Scho. & Lef.* 352. *Green vs. Johnson, 3 G. &. J.* 390. *Kent Com.* 233. *Sto. Eq. Ple.* 210, 212, 214.

By ALEXANDER and McMAHON for the appellee, who contended:

1. That the first release executed before the complainant attained his age of twenty-one years, is simply void: and independent of this objection, would be set aside in equity, as

obtained by a guardian from his ward, pending a suit in equity, brought by the guardian for administration of the estate, after the court had directed an account to be taken in the cause, without any examination into the state of the accounts by the complainant or any one of his friends, and for a consideration grossly inadequate to the just claims of the complainant. It will be especially insisted that the settlement was based on a principle, i. e. the validity of the pretended appointment by *Mrs. Bond,* which had been expressly repudiated by the court.

2. That the second or confirmatory release was executed without any examination into the subject, instituted by the complainant after he had attained his age of twenty-one years, and without any tender of information made to him by the defendant. It is therefore obnoxious to all the objections (other than the minority of the party) which existed against the original release.

3. That this suit was brought within a reasonable time (say two years) after the complainant had any cause to suspect the fraud which had been practised on him, and within twelve years after the date of the confirmatory release.

They cited:—*Hylton vs. Hylton,* 2 *Ves. Sen.* 547. *Hatch vs. Hatch,* 9 *Ves.* 297. 1 *Sto. Eq.* 317 sec. *Ib.* sec. 617, 320. 24 *Law Lib.* 327. *Wych vs. Packington and wife,* 1 *Bro. Parl. Cases,* 372. *West C. Rep.* 148. *Hicks vs. Hicks,* 3 *Atk.* 274. *Walker vs. Symonds,* 3 *Swan,* 72, 73. *Wedderburn vs. Wedderburn,* 4 *Mylne & Craig,* 41. *The State vs. De Witt & Watts,* 2 *Hill,* 286. *Fish vs. Miller,* 1 *Hoffman,* 269, 70. *Hunter vs. Atkins,* 8 *Con. Ch. Rep.* 314. *Wedderburn vs. Wedderburn,* 2 *Keen,* 722. *Sto. Eq.* 685. *Kelsey & McIntyre, vs. Hobby & Bond,* 16 *Peters,* 278. *Burke vs. Crosbie,* 1 *Ball & Beatt.* 232. *Sto. on Eq. P.* 744. *Sto. Eq.* 1521. *Hovenden vs. Lord Annesley,* 2 *Sch. & Lef.* 634. *South Sea Co. vs. Wymondsell,* 3 *P. Wms.* 143. *Sto. Eq. Pl.* 213, 214. 41 *Law Lib.* 84. *McPherson on Inf.* 364. 2 *Sto. Eq.* 1352. 1 *Sto. Eq.* 21, 317. 24 *Law Lib.* 327, *Llewin. Says' Ex'rs vs. Barnes,* 4 *S. & Raw.* 114. *Hatton vs. Weems,* 12 *G. & J.* 108. *Jones vs. Curry,* 1 *Swan.* 71, 72. 24 *Law Lib.* 327. *Morse*

*vs. Royal*, 12 *Ves.* 373.   *Wood vs. Downes*, 18 *Ves.* 126, 128.
*Sto. Eq.* 345.   *Tucker et al. vs. Moreland*, 10 *Peters*, 75, 76;
*Cresinger vs. Welsh*, 15 *Ohio Rep.* 156.   2 *Dev. & Batt.*
327, 328.   1 *Sto. Eq.* 241, 345.   *Calvert on Parties*, 123, 126.
*Kirby vs. Turner*, 1 *Hop.* 309.   *Story on Eq.* 314.   17 *Law
Lib.* 126, 133.

ARCHER, C. J., delivered the opinion of this court.

We do not consider it necessary to enquire into the question,
whether the release executed by the complainant before he
attained age was void or voidable.   The release now in con-
troversy, was executed after the complainant attained age, and
the enquiry is whether the release executed at such a time, and
under the circumstances, was void.   No doubt a release exe-
cuted by a ward or *cestui que trust*, shortly after he attains
age, without the necessary accounts or information from which
a judgment may be formed of the condition of the estate would
not meet with the favor of a court of equity.   The enquiry
will, therefore be, whether the necessary information was im-
parted to the complainant to enable him or his advisers to form
a judgment of the condition of the estate?

The determination of this question will render it necessary
to examine the circumstances connected with the release above
adverted to.   The conduct and acts of the parties anterior to
the release, though occurring during the minority of the com-
plainant, are connected with the release, and form its basis.   If
at the time of the first release, the necessary information was
imparted, the examination of friends and advisers as to the state
and condition of the trust fund was given, these must be con-
sidered the operating causes for the release at the time of its
execution.

There would under such circumstances, be no room for the
imputation of undue influence, when the party must be supposed
to act with knowledge.

The complainant arrived at age on the 27th May, 1831.
The deed of release in question was executed on the 8th June,
1831.

By the deed of settlement made by *Elizabeth Bond*, the grandmother of the complainant, under which he claims, *John Forbes* and *Thomas Marshall* were made the grantees and trustees, and after the death of *John Forbes*, *Thomas Marshall* the surviving trustee, on the 9th of March, 1820, conveyed the property then in trust to *George Forbes*, the present trustee, subject to all the trusts contained in the original deed from *Elizabeth Bond;* and in the month of January, 1821, *George Forbes* filed a bill in *Charles* county court, against all the *cestui que trusts*, praying for a settlement of the trust estate under the direction of that court, as a court of equity. This cause was subsequently removed to the Court of Chancery, and while it was there pending, propositions of compromise were made, and that the parties might be fully informed of their respective rights, the books of the trust were subjected to the examination of the respective parties, and the accounts were examined by *Col'n Ashton*, who was solicitor for the defendants in that suit, and by *Mr. Webster*, who was one of the *cestui que trusts*. A statement was also made of the condition of the accounts by a skilful accountant, *Richard Dorsey*, at the request of *Judge Clement Dorsey*, (who was then the counsel of the present defendant, *George Forbes*,) which was exhibited to the parties; and upon that examination, *Col'n Ashton* the solicitor advised the compromise, which was effected with the complainant, and *Beale* the brother-in-law of the complainant, who was himself a lawyer, either from his own examination, or acting by the advice of his solicitor, also accepted the compromise and executed a like release. Every facility was furnished by the defendant for the examination of the accounts, and we have no evidence of any books or accounts being kept back. They were examined by the parties or some of them, and by the solicitors of the parties fully able and competent to determine what was due from the trustees to the *cestui que trusts*. This examination gave rise to the compromise, and release made on the 30th of April, 1830, and forms the basis of the release executed on the 8th of June, 1831, after the complainant arrived at age. It is immaterial whether the com-

plainant examined the books and accounts of the trust, or not. It is sufficient that they were examined by persons competent to make the examination for him.

The fair presumption, we think, from the facts of the case, is, that all proper and necessary information was imparted to the complainant, and the advisers and solicitor of the complainant. The answer of *George Forbes* avers this fact, and it is in proof, that the books of the trust estate were exhibited and examined by skilful and competent men who advised the compromise. The parties knew the trust estate which came to the hands of the defendant, and of course knew his accountability for the rents and profits; and it is a fair presumption, that these rents and profits were taken into the estimate in the adjustment of the compromise. As to the administration accounts of *George Forbes*, passed on the estate of his mother, *Elizabeth Bond*, they were matters of public record, and for aught we know, existing only there, and ought to be presumed under the circumstances of this case to have been known to the parties examining the accounts of the trust fund. With regard to these or any other matter connected with the accounts of the trust, there is no proof whatever of concealment, and to hold the defendant after the lapse of ten years, when the more important witnesses of all these transactions may be dead, to actual proof of detailed information of what the records and accounts displayed, would we think, be to exact more than ought in reason, or justice to be demanded of a trustee, especially in a case where there is proof of frankness, and a desire to furnish information necessary to a proper adjustment of the estate.

Independent of the above considerations, there have been several recognitions of this release as a valid release, made by the complainant at different times. In the complainant's deed to *Ignatius T. Gardner*, bearing date on the 20th July, 1831, the release is expressly referred to, and the lands constituting in part the consideration for the release are for a valuable consideration bargained and sold to *Gardner*.—On the 7th of February, 1834, nearly three years after the release, in a re-

ceipt given by the complainant to *George Forbes*, he recognizes the settlement as a valid settlement.

Again, the complainant was made one of the parties to the bill of *George Forbes*, filed for a settlement of the trust estate. This bill was answered by *James Sothoron* for himself, and as guardian for the defendant. And although the record does not show that an order was passed, appointing said *Sothoron* guardian *ad litem*, the answer was not objected to as an answer for the infants, but would seem from the proceedings to have been taken as a valid answer, and the cause proceeded as if the parties were all regularly parties in court, and had duly answered, commission issued to take testimony, affidavits were taken, orders passed to bring in the books of the trust estate and the books of *James Sothoron*, and references were made to the auditor to state an account. It is manifest that the Chancellor, and the county court from which the cause was removed, treated the complainant as a party, and as having duly answered the bill. The complainant thus being a party to this bill, on the 1st January, 1833, by his solicitor entered the bill dismissed by agreement. This agreement for the dismissal of a bill for the settlement of the trust, was made more than a year after the release in question, and it may be presumed, that so far as the present complainant was a party to that agreement, the dismissal was founded on his release and the consideration which passed to him for that release. If the complainant is to be considered as a party to this proceeding, and if the above presumption is just, this agreement was another unequivocal recognition of the release in question.

It is obvious that the great difficulty in the way of the complainant, was the large account which stood on the trust books against the father of the complainant, which would occasion a proportional diminution of the sum to be paid to the complainant for his distributive share. It could not be pretended that the parties were ignorant of *George Forbes'* liability for the rents and profits of such of the estate as was in his possession, or the amount thereof, or that they were ignorant of the administration of the estate of *Elizabeth Bond;* accordingly,

in this proceeding, the whole condition of the trust estate was developed. The rents and profits of the lands were brought into view; the administrative accounts of George Forbes constituted a part of the record. It is therefore clear, that if the complainant is to be considered a party to this proceeding, (and we think he is) knowledge is to be imputed to him of every thing he was entitled to know, and proper to be known, for a right decision in regard to a confirmation of the release, and thus being in possession of all proper and necessary information at the time of the dismissal of the bill, the complainant's act in thus dismissing the bill by agreement, and in his signature to the receipt above referred to, dated 7th February, 1834, are such recognitions of the act in question, as would amount to a confirmation of the release, considering it merely as a voidable release.

The great and leading object of the bill was to render the Marshalls liable for the alleged waste of the trust estate, by John Forbes, and for the alleged fraudulent alteration of the accounts. In accordance with this, is the complainant's declaration as proven to have been made to Somerville, that he did not believe George Forbes had any portion of his property, but that the Marshalls had, and that he was determined to make them pay for it. So far as the defendant was concerned, it is obvious from this that the complainant found no fault with the release he had executed.

We do not consider that any objection could be taken to the release, upon the ground that the compromise was founded on the appointment of Mrs. Bond. The court's decision with regard to this appointment, was known to the parties, and if they thought proper to waive any benefit which might accrue to any of them under this decision, it was surely competent for them to do so. That it was her wish and intention that the property should pass to to her representatives in pursuance of this appointment is apparent, and this consideration would seem to make such an arrangement entirely proper, and if the complainant sanctioned it when he came of age, the release ought not to be affected by that fact.

The validity of this release on the ground of fraud, we think cannot be impeached. The alleged fraud consists in concealment, in alterations and erasures of the accounts, and in the alteration of the covers and labels on the books of the trust, whereby an examination of the books was rendered more difficult.

As to the charge of concealment, we consider it wholly unsupported by the evidence.

It is alleged secondly, as a ground of fraud, that a large item in the account of *James Forbes*, the father of the complainant, in the books of the trust estate kept by one of the original trustees, was erased, whereby his account was materially changed to the prejudice of *James Forbes*, and the complainant claiming under him. The answer of the defendant denies such erasure, and although it is sworn to by *Wheatly*, the whole proof in the cause induces us to believe that the erasure complained of did not exist. Examinations of the accounts of this trust estate, embracing the account of *James Forbes*, were made by skilful accountants, and by persons interested in detecting the erasure, if one existed, yet no such erasure was discovered, and *Judge Marshall* swears, that he saw no such erasure, and he could not perceive how such an erasure could have been made without bearing traces which would lead to detection, as the accounts were objects of close examination. The books were in *Washington*, taken thither expressly for the purpose of examination, preparatory to a compromise, and were examined by *Col. Ashton*, the counsel of the complainant and of his sister and brother-in-law, by *Mr. Webster*, the husband of *Miss Sothoron*, one of the persons entitled under the trust, and were particularly examined at the instance of *Judge Clement Dorsey*, by *Richard Dorsey*, an accountant; and were brought into court, where they remained for the inspection and scrutiny of all the parties interested, yet no erasure was at any time discovered. It is inconceivable that an erasure of the character charged, could have been committed, and under all these circumstances of vigilant scrutiny have avoided detection. It is equally extraordinary that the

witness testifying to these erasures should have been from time to time in communication with the parties, and having full knowledge that a compromise of the claims of the respective parties was about being made, should have withheld information from them of a fact so important to the just distribution of the trust estate. During any of the examinations by the books, had by any of the parties or by the witnesses, no complaint of this kind has been made, and we consider the charge as disproved by the evidence.

We are therefore of opinion that the release of the 8th of June, 1831, is valid and binding on the complainant, and that he is not entitled to a decree for an account.

DECREE REVERSED AND BILL DISMISSED WITH COSTS.