MADISON LEVERING ET AL.
vs.
B. M. HEIGHE, ADM'R OF
NATHAN LEVERING ET AL.

December Term, 1850.

[INFANTS—CONTRACTS BY.]

THERE is no doubt of the power of a female infant, by a contract before marriage, to bar herself of her right of dower in the real estate of her husband, and of her distributive share of his personalty.

So also a settlement upon a wife before marriage, in lieu of dower, to take effect immediately upon the death of the husband, and to continue during the life of the widow, if it appears to furnish a reasonable support for the widow, and to be certain and equitable, will be considered as a bar of her dower.

It seems equally clear that a female infant, before marriage, can bind her *general personal* estate by a settlement; because such personalty, upon the marriage, becomes the property of the husband. This general equity principle may be considered as modified in this state, by the act of 1842, ch. 293, in respect to the particular description of property therein referred to.

But a female infant would not be bound by a settlement of her *real estate* made before marriage.

Nor would a female infant be bound by an ante-nuptial settlement of her real estate or her separate personalty, though made with the approbation of the court.

Contracts made by infants for necessaries are binding; one that the court can see and pronounce to be prejudicial to an infant, will be pronounced *void;* while such as may be for the benefit of the infant, will be held *voidable* only.

A female infant may give efficiency to a *voidable* settlement, either by an express confirmation after attaining majority, or by some act which would make it inequitable in her to impeach it.

If an infant does not live to ratify or reject a *voidable* contract made during his minority, it may be *set aside by parties who are *privies in blood*, though not by those who are *privies in estate* only.

A. died intestate, leaving uncles and aunts, and the children of uncles and aunts: HELD, that under the act of 1820, ch. 131, sec. 4, the uncles and aunts are entitled to the whole real estate, to the exclusion of the children of the deceased uncles and aunts.

[The bill in this case was filed on the equity side of Baltimore County Court, on the 19th of September, 1834; for a sale of certain real estate. A decree was passed for a sale at September term, 1838, and the trustee filed his report of sales. The Auditor stated an account distributing the proceeds of sale, and exceptions were filed to parts of that report, by some of

the parties, on the 15th of November, 1839, upon grounds sufficiently appearing from the Chancellor's opinion, which also contains a statement of the facts.]

THE CHANCELLOR:

This case, which has been argued upon exceptions to the report of the Auditor, presents a very interesting question, and one which it is believed is entirely new in our courts.

The question is, whether a settlement of her real estate, made by a female infant, in contemplation of and upon the eve of her marriage, is so far valid, that in the event of her dying during her minority, the estate thereby conveyed shall descend in a manner different from the direction which the law of descents would give it in case of intestacy ?

The facts are as follows : Augusta Virginia Levering, being about to intermarry with George B. Stephenson, and being at that time a minor about sixteen years of age, with the consent of her intended husband, who was a party to the deed, on the 11th of February, 1835, conveyed her entire estate, real and personal, to a trustee, to hold the same, and the profits thereof, in trust for her own separate use during the coverture, free from the control or claim of her husband or his creditors, and with power to sell and dispose thereof without his concurrence, either by deed or will ; and in case of her failure to made such disposition, then, in trust for any child or children she might thereafter have, their heirs, executors, administrators or assigns : but in case she should die without leaving a child or children, or descendants of the same, living at the time of her death, then one-half of the estate so conveyed, for the use of her said husband and his heirs, and the other half for the use and benefit of her own right heirs.

The marriage took place, and Mrs. Stephenson, the grantor in the deed, died two years thereafter, under the age of nineteen, leaving an infant born of the marriage, who survived her mother only a few days.

The real estate has been sold under a decree of Baltimore County Court, and the question is, whether the surviving hus-

band is entitled only to a courtesy interest in the real estate included in the settlement, or to the whole thereof, as heir to his child, to the exclusion of the heirs of his wife. This question depends upon the answer which is to be given to another, and that is, whether the child took *by descent* from the mother, or as a *purchaser* under the deed of settlement.

The general rule with reference to the contracts of infants, is stated by the Court of Appeals, in the case of *Fridge* vs. *The State, use of Kirk,* 3 *G. & J.,* 115.

Some of their contracts, say the court, are binding, such as contracts for necessaries ; some are void, and others are voidable only, such as contracts that may be for the benefits of infants. But a contract that the court can see and pronounce to be to the prejudice of the infant is void ; and in that case the court did pronounce a release executed by a female ward to her guardian, immediately upon her attaining the age of sixteen, upon receiving from him a note for the balance due her, absolutely void. This question came up again in the case of *Forbes* vs. *Forbes,* 5 *Gill,* 29, where the court, without deciding that a release executed by a minor under peculiar circumstances, was void or only voidable, adjudged that a second release, executed after he attained his majority, under the special circumstances of that case, and full proof of fairness and frankness in an unreserved disclosure of facts and careful examination of accounts by the friends and advisers of the minor, was good, and that these circumstances would be regarded as the operating causes of the second release at the time of its execution.

It cannot be denied that the question involved in this case has been the subject of much controversy in the English Chancery, and that conflicting opinions in regard to it, have been entertained and expressed by the eminent men who have presided over that court.

Mr. Atherly, in his treatise on marriage settlements, commencing at page 29, after a review of most of the cases, comes to the conclusion that the authorities in favor of an infant's being able to bind her real estate by a settlement on marriage, greatly preponderate over those the other way, though he very frankly admits that the point cannot be considered as settled.

On the other hand, *Macpherson on Infants*, after an examination of the same cases, and perhaps of some others, arrives at a different result, and concludes that it is now established, that the real estate of a female infant is not bound, so far as she is concerned, by a settlement on her marriage; because the general incapacity of infancy invalidates the contract, and the contract of the husband cannot extend beyond the limited interest which he acquires by the marriage.

There would seem to be no doubt of the power of a female infant to bar herself, by her contract before marriage, of her right of dower in her husband's lands, and of her distributive share of his personal estate. The decree of Lord Nottingham to the contrary, in *Drury* vs. *Drury*, 1 *Eden's Rep.*, 39, was reversed in the House of Lords, and this reversal is considered by Chancellor Kent as finally settling the question. The case of Drury vs. Drury turned upon the statute of 27, Henry 8, introducing jointures, which Lord Nottingham supposed extended only to adult women, and this was the point of difference between him and the House of Lords.

This question came before the Chancery Court of New York, in the case of *McCartee* vs. *Teller*, 2 *Paige*, 511, and after a very learned and elaborate discussion at the bar, it was decided that by analogy to the statute, (which made a legal jointure settled upon an infant before marriage a bar of her dower,) a competent and certain equitable provision settled upon her in lieu of dower, to take effect immediately upon the death of the husband, and to continue during the life of the widow, and being a reasonable and competent livelihood for the wife, under the circumstances, was also a bar. There would seem to be as little doubt of the power of a female infant to bind, by a settlement before marriage, her *general personal* estate, because such personal estate becomes by marriage the property of the husband, and the settlement is in effect his settlement and not hers. This general principle of the courts of equity may, and probably would, be considered modified by the act of our legislature of 1842, ch. 293, with reference to the particular description of property mentioned in the act.

But the question now to be decided is, whether a female infant has the capacity to bind her *real estate* by a marriage settlement; and this question is considered by Chancellor Kent as settled against the power, by the case of *Milner* vs. *Lord Harewood*, 18 *Ves.*, 259.

It is true, the precise point which the facts of that case made it necessary to decide, did not involve this question; but it is equally true, Lord Eldon more than once, in the course of his argument, expressed a decided opinion against the power; and I am persuaded that no one can read what his lordship said in that case, without being fully satisfied of the absolute conviction of his mind, that a female infant would not be bound by such an ante-nuptial settlement of her own real estate.

A very strong case upon this subject is reported in 13 *Eng. Cond. Ch. Rep.*, 78—the case of *Simpson* vs. *Jones;* and according to the opinion of the Master of the Rolls, (Sir John Leach,) pronounced in that case, after full deliberation, the point would appear to be definitely settled against the power. The infant in that case was a ward of the court, and the settlement, which was a most reasonable one, was made with its approbation, after a reference to the Master—and yet it was held not to be binding upon the infant. It was not even contended there that the infant was competent so to bind her real estate, or her *separate* personal estate, if the settlement had not been made with the approbation of the court; and the question was, whether the court had jurisdiction to give to a female infant the power of disposition of her separate property during her infancy, by a settlement made in contemplation of marriage.

In deciding against the jurisdiction of the court to confer such power upon an infant, Sir John Leach said, "whatever doubts may have been entertained upon the subject formerly, I take it to be clear that the real estate of a female infant would not be bound by a settlement made with the approbation of the court; and it appears to me to follow, that the same principle is applicable to personal estate settled to her separate use."

The parties who maintained the validity of the settlement in that case, presented a petition of appeal to the House of Lords;

but it was subsequently abandoned, as it was found that the lady would be of age, and would have the power of confirming the settlement, before the appeal could be disposed of.

It appears to me, therefore, that the weight of authority is against these settlements, and I can see no sufficient reason why the rule of law which incapacitates an infant during minority from disposing of property, should be released in their favor.

The contract of a female infant in reference to her dower and thirds, when made upon sufficient consideration, stands, as we have seen, upon a totally different ground; as do those settlements before marriage, relating to the *general personal* estate, which, upon the marriage, would, by operation of law, devolve upon the husband.

But though I think the settlement in this case was not absolutely binding upon the wife, so far as the real estate is concerned, I do not look upon it as simply *void*, because its stipulations and provisions appear to me to have been beneficial to her.

Indeed, none of the cases to which I have been referred, or which I have met with in the books, treat these settlements as merely *void* and incapable of confirmation by the wife after she attains the competent age. The cases, on the contrary, show that the infant may give efficacy to the settlement, either by an express confirmation after attaining majority, or by some act which would make it inequitable in her to impeach it.

In *Durnford* vs. *Lane*, 1 *Bro. C. C.*, 106, Lord Thurlow, after expressing a strong opinion against the validity of settlements by female infants in contemplation of marriage, even when made in consideration of competent settlements upon them, says, if she had a settlement from her husband, and after his death she takes possession of it, he thought she would be bound by the equity arising from her own act; and this observation he made, as he remarked, in deference to the cases of *Cannal* vs. *Buckle*, 2 *P. Wm.*, 342, and *Harvey* vs. *Ashley*, 3 *Atk.*, 615.

In this latter case, the opinion of Lord Hardwick is clearly expressed in favor of the validity of the agreement of an infant,

when confirmed by his acts after the disability is removed; and in the case of *Milner* vs. *Lord Harewood*, 18 *Ves.*, 259, the sanction of Lord Eldon is given, in the most unqualified terms, to the doctrine upon this subject as stated in Durnford vs. Lane: it being, in the former case, held, that a female infant was not bound by any agreement to settle her real estate, if she did not choose to ratify it; and that nothing but her own act, after the period of majority, could make it binding upon her. The opinion of the Master of the Rolls, in *Simpson* vs. *Jones*, 13 *Cond. Ch. Rep.*, 78, is in accordance with the previous cases in reference to the capacity of the infant to confirm the settlement, after attaining the required age. In pronouncing against a settlement in that case, he said that a good title could not be made under it, "unless by the confirmation of the wife, after she attains the age of twenty-one."

I take it, therefore, to be quite clear, that though a female infant has not the capacity *to bind her own real estate* by a marriage settlement, that, nevertheless, she may or may not give it validity by her acts, or by express confirmation when the disability ceases to exist; and that, therefore, such settlements cannot be regarded as purely and absolutely void.

Supposing this to be the true doctrine, it would seem to follow, necessarily, that the settlement of the 11th of February, 1835, so far as the real estate of Mrs. Stephenson is concerned, cannot be allowed to stand—it having been executed by her during her minority, and she having died before attaining her full age, or having done or being capable of doing any act to give it validity. But conceding the settlement to be voidable merely, and to require some act of dissent or disaffirmance to destroy its efficacy, it is material to inquire whether these exceptants are in a condition to entitle them to avoid it; they being the brothers and sisters, and the children of the sisters of the whole blood of Mrs. Stephenson.

It is very certain that Mrs. Stephenson, who died under coverture, and a minor, was not herself in a situation requiring or enabling her to avoid the settlement; and her infant child, who died but a few weeks after its birth, was equally incapable

of doing so ; and if these parties are not permitted to avoid it, then it follows that the settlement must stand, and all the consequences resulting from regarding it as a valid instrument must ensue.

These parties, by their exceptions filed on the 15th November, 1839, contest the validity of the settlement, and by their petition, filed on the 30th September, 1846, the fund being still under the control of the court, expressly disaffirm the deed, and claim the fund in opposition to it. And it is and must be conceded, that George B. Stephenson, the surviving husband of Augusta, and father of her infant child, can have no right to the money now in controversy, unless the deed in question is to be regarded as a valid and operative instrument. If it be not, then, as this estate descended to this infant child on the part of the mother, it must, upon her death, go to the relations on the part of the mother, (who are the exceptants,) to the exclusion of the father, according to the provisions of the first section of the act of 1820, ch. 191.

It can only be by considering the deed valid, and that the child takes as a purchaser under it, that the father can claim— the child, upon that hypothesis, constituting a new root or stock of inheritance, and the father, under the circumstances of the case, by the terms of the same act, taking as heir to his child.

These exceptants are privies in blood to the mother and the child ; and standing in that relation they seem to have a clear right to set aside the deed in question—the rule being that the infant himself, or his representatives, privies in blood, can avoid a voidable conveyance made by the infant. *Whittington's Case*, 8 *Rep.*, 84.

If the infant does not live to confirm or adopt, at full age, the feoffment which he made during his minority, it may be set aside by persons who are privy to him in blood, but not by a person who is privy in estate only. *McPherson on Infants*, 465.

My opinion, therefore, is, that viewing this settlement as one of those voidable acts, which must be disaffirmed in order to

set it aside, that these exceptants, who are privy in blood with the infant, are competent to do so; and that, having availed themselves of that privilege, the deed is to be disregarded, and the estate then descending to the heirs on the part of the mother, the father can take no more than his courtesy interest, and that, it appears from the proceedings, he has already received. I am further of opinion, that, upon the true construction of the act of assembly, and upon the authority of the case of *Porter* vs. *Askew*, 11 *G. & J.*, 346, the residue of the proceeds of these sales, resulting from that portion of the real estate sold which belonged to Mrs. Stephenson, must be distributed among the uncles and aunts of her infant child, to the exclusion of the children of uncles and aunts, if any there be. The case will be sent to the Auditor, to state an account accordingly.

CHARLES H. PITTS for Complainants.
JOHN H. B. LATROBE for Defendants.