PRATT and ALEXANDER, for Complainant.
ROBT. J. BRENT, for Defendant.

---

MADISON LEVERING AND OTHERS,
vs.
B. M. HEIGHE, ADM'R OF NATHAN LEVERING ET AL.

DECEMBER TERM, 1850.

[MARRIAGE SETTLEMENT OF HER REAL ESTATE, BY A FEMALE INFANT.]

A FEMALE infant, in contemplation of marriage, and with the consent of her intended husband, executed a marriage settlement, conveying her entire real estate to a trustee, in trust for her separate use during coverture, with power to dispose of the same by deed or will, and in case of failure to make such disposal, in trust for any child or children she might thereafter have, and their heirs, &c.; but in case she died without leaving a child or children, or descendants of the same, living at the time of her

death, then one-half of said estate for the use of her husband and his heirs, and the other half to her own right heirs. She died during minority, leaving an infant child, who survived her but a few days. HELD—

That she had not the capacity so to bind her own real estate; but as the conveyance contains provisions beneficial to her, it is *voidable* only, and not absolutely *void*, and can be avoided by her privies in blood, but not by privies in estate only.

Contracts of an infant for necessaries, are binding, and such as are for his benefit, are voidable only; but a contract that the Court can see, and pronounce to be to the prejudice of the infant, is void.

There is no doubt of the power of a female infant to bar herself by her contract before marriage of her right of dower, in her husband's land, and of her distributive share of his personal estate.

It is clear, also, that such infant has the power to bind, by a settlement before marriage, her general personal estate, because such personal estate becomes, by the marriage, the property of the husband; and the settlement is, in effect, his settlement, and not hers.

The infant himself, when he attains age, or his representatives privies in blood, can avoid a voidable conveyance, made by the infant; but not privies in estate only.

In this case, the settlement being avoided, it was HELD—That the estate descended to, and the proceeds of the sale thereof should be distributed among, the uncles and aunts of the infant child, to the exclusion of the children of uncles and aunts.

---

[Nathan Levering, by his will, dated the 1st of February, 1827, directed, that his executors should hold his real and other estate, not therein otherwise disposed of, until his youngest child should attain the age of twenty-one years; and then directs the whole residue of his estate, real and personal, to be equally divided among his children, and be transferred and delivered to them, in possession, on the arrival of his youngest child at the age of twenty-one years. He left six children, surviving him; and the executor, declining the trust, B. M. Heighe, was, by a decree of Baltimore County Court, sitting in equity, dated the 25th of September, 1834, and passed, upon petition of the parties interested, appointed trustee, to execute the trusts of the will. On the 23d of October, 1838, after the youngest surviving child had attained the age of twenty-one, a petition was filed in the cause, by some of the parties interested, for a sale of the property, for the purpose of distribution. The other parties in interest, who were made

defendants, answered, and assented to the sale. George B. Stephenson, one of the said defendants, the surviving husband of Augusta Virginia Levering, the youngest child of the said Nathan Levering, filed the marriage settlement, executed at the time, and under the circumstances stated in the opinion of the Chancellor. A decree was thereupon, on the 25th of October, 1838, passed, for the sale of the property, and said Heighe appointed trustee for that purpose. The sale was accordingly made, and the Auditor, by his account, filed on the 29th of October, 1839, assigned one-sixth of the net proceeds of sale, to George B. Stephenson, as heir of his child by his wife, Augusta Virginia, said child having survived its mother and taken by purchase under said marriage settlement. To this account, the surviving brothers and sisters, and the children of the deceased brothers and sisters of the said Augusta, on the 15th of November, 1839, filed their exceptions, upon the ground that said settlement was wholly void as against them, and that the said Stephenson is only entitled to his curtesy interest in said property. Other accounts were then stated, in accordance with the views of the exceptants, and were confirmed, so far as they assigned the curtesy interest to said Stephenson; but the difference between this sum, and what he claimed under the settlement, was expressly reserved for future order. The other proceedings are sufficiently stated in the Chancellor's opinion.]

THE CHANCELLOR :

This case, which has been argued upon exceptions to the report of the Auditor, presents a very interesting question, and one which, it is believed, is entirely new in our Courts.

The question is, whether a settlement of her real estate, made by a female infant in contemplation of, and before the eve of her marriage, is so far valid that in the event of her dying during her minority, the estate thereby conveyed shall descend in a manner different from the direction which the law of descents would give it in case of intestacy ?

The facts are as follows. Augusta Virginia Levering, being

about to intermarry with George B. Stephenson, on the 11th of February, 1835, she being then a minor, about sixteen years of age, with the consent of her intended husband, who was a party to the deed, conveyed her entire estate, real and personal, to a trustee, to hold the same, and the profits thereof, in trust for her own separate use during the coverture, free from the control or claim of her husband, or his creditors, and with power to sell and dispose thereof without his concurrence, either by deed or will, and in case of her failure to make such disposition, then in trust for any child or children, she might thereafter have, their heirs, executors, administrators, or assigns. But in case she should die without leaving a child or children, or descendants of the same, living at the time of her death, then one-half of the estate is conveyed for the use of her said husband and his heirs, and the other half for the use and benefit of her own right heirs. The marriage took place, and Mrs. Stephenson, the grantor in the deed, died two years thereafter, leaving an infant, born of the marriage, who survived her mother only a few days.

The real estate has been sold, under a decree of Baltimore County Court, and the question is, whether the surviving husband is entitled only to a curtesy interest in the real estate included in the settlement, or to the whole thereof, as heir to his child, to the exclusion of the heirs of his wife? And this question depends upon the answer which is to be given to another, and that is, whether the child took by *descent* from the mother, or as a purchaser under the deed of settlement?

The general rule with reference to the contracts of infants, is stated by the Court of Appeals in the case of *Fridge* vs. *State, Use of Kirk*, 3 *G. & J.*, 115. Some of their contracts, say the Court, are binding, such as contracts for necessaries. Some are void, and others are voidable only, such as contracts that may be for the benefit of infants. But a contract that a Court can see and pronounce to be to the prejudice of the infant is void; and in that case the Court did pronounce a release, executed by a female ward to her guardian immediately upon her attaining the age of sixteen, upon receiving from him a note for the

balance due her, absolutely void. This question came up again, in the case of *Forbes* vs. *Forbes*, 5 *Gill*, 29, when the Court, without deciding whether a release executed by a minor under peculiar circumstances was void, or only voidable, adjudged that a second release, executed after he attained his majority, under the special circumstances of that case, and full proof of fairness and frankness, on an unreserved disclosure of facts, and careful examination of accounts, by the friends and advisers of the minor, was good, and that these circumstances would be regarded as the operating causes of the second release, at the time of its execution.

It cannot be denied that the question involved in this case has been the subject of much controversy in the English Chancery, and that conflicting opinions in regard to it have been entertained and expressed by the eminent men who have presided over that Court.

Mr. Atherly, in his treatise on *Marriage Settlements*, commencing at page 29, after a review of most of the cases, comes to the conclusion, that the authorities in favor of an infant's being able to bind her real estate by a settlement upon marriage, greatly preponderate over those the other way, though he very frankly admits that the point cannot be considered as settled.

On the other hand, *McPherson on Infants*, after an examination of the same cases, and perhaps of some others, arrives at a different result, and concludes that it is now established that the real estate of a female infant is not bound, so far as she is concerned, by a settlement on her marriage, because the general incapacity of infancy invalidates her contract, and the contract of the husband cannot extend beyond the limited interest which he acquires by the marriage.

There would seem to be no doubt of the power of a female infant to bar herself, by her contract before marriage, of her right of dower in her husband's lands, and of her distributive share of her personal estate. The decree of *Lord Nottingham* to the contrary, in *Drury* vs. *Drury*, in 2 *Eden's Rep.*, 39, was reversed in the House of Lords, and this reversal is con-

sidered by Mr. Chancellor Kent as finally settling this question. The case of *Drury* vs. *Drury* turned upon the statute of 27th *Hen.* 8, which introduced jointures, which *Lord Nottingham* supposed extended only to adult women, and this was the point of difference between him and the House of Lords.

This question came before the Chancery Court in New York, in the case of *McCartee* vs. *Teller*, 2 *Paige*, 511, and after a very learned and elaborate discussion at the bar, it was decided, that by analogy to the statute which made a legal jointure settled upon an infant before marriage a bar to her dower, a competent, and certain equitable provision settled upon her in bar of dower, and to take effect immediately upon the death of the husband, and to continue during the life of the widow, and being a reasonable and competent livelihood for the wife under the circumstances, was also a bar.   There would seem to be as little doubt of the power of a female infant to bind, by settlement before marriage, her general personal estate, because such personal estate becomes, by the marriage, the property of the husband, and the settlement is in effect his settlement, and not hers.  This general principle of the Courts of Equity, may, and probably would be considered as modified by the Act of our Legislature of 1842, ch. 293, with reference to the particular description of property mentioned in the Act.

But the question now to be decided is, whether a female infant has the capacity to bind *her own real estate* by a marriage settlement, and this question is considered by Chancellor Kent as being settled against the power, by the case of *Milner* vs. *Lord Harewood*, 18 *Ves.*, 259.  It is true the precise point which the facts of that case made it necessary to decide, did not involve this question, but it is equally true that *Lord Eldon*, more than once in the course of his argument, expressed a decided opinion against the power; and I am persuaded no one can read what his *Lordship* said in that case, without being fully convinced of the absolute conviction of his mind, that a female infant would not be bound by such an *ante-nuptial* settlement of her own real estate.

A very strong case upon this subject is reported, in 13 *Eng.*

*Cond. Ch. Rep.*, 78, the case of *Simson* vs. *Jones*, and according to the opinion of the Master of the Rolls (*Sir John Leach*), pronounced after full deliberation, the point would appear to be definitely settled against the power. The infant in that case was a ward of the Court, and the settlement, which was a most reasonable one, was held not to be binding upon the infant. It was not even contended there that the infant was competent so to bind her real estate or her personal estate, if the settlement had not been made with the approbation of the Court, and the question was, whether the Court had jurisdiction to give to a female infant the power of disposition of her separate property, during her infancy, by a settlement made in contemplation of marriage. In deciding against the jurisdiction of the Court to confer such power upon an infant, *Sir John Leach* said, " whatever doubts may have been entertained on the subject formerly, I take it to be clear that the real estate of a female infant would not be bound by a settlement made with the approbation of the Court, and it appears to me to follow, that the same principle is applicable to personal estate settled to her separate use." The parties who maintained the validity of the settlement in that case, presented a petition of appeal to the House of Lords, but it was subsequently abandoned, as the lady, it was found, would be of age, and would have the power of confirming the settlement before the appeal could be disposed of.

It appears to me, therefore, that the weight of authority is against these settlements, and I can see no sufficient reason why the rule of law which incapacitates infants from disposing of property should be relaxed in their favor. The contract of a female infant in reference to her dower and thirds, when made upon a sufficient consideration stands, as we have seen, upon a totally different ground, as do those settlements before marriage, which relate to her general personal estate, which upon the marriage would by operation of law devolve upon the husband.

But though I think the settlement in this case was not absolutely binding upon the wife, so far as the real estate is con-

cerned, I do not look upon it as simply void, because its stipu-
lations and provisions appear to me to have been beneficial to
her.

Indeed, none of the cases to which I have been referred, or
which I have met with in the books, treat these settlements as
merely void, and incapable of confirmation by the wife after
she attains the competent age.   The cases, on the contrary,
show that the infant may give efficacy to the settlement,
either by an express confirmation after attaining majority,
or by some act which would make it inequitable in her to
impeach it.

In *Durnford* vs. *Lane*, 1 *Brown's Ch. Cases*, 106, Lord
Thurlow, after expressing a strong opinion against the validity
of settlements by female infants in contemplation of marriage,
even when made in consideration of a competent settlement
upon her, says, "if she has a settlement from her husband, and
after his death she takes possession of it, he thought she would
be bound by the equity arising from her own act, and this
observation he made, as he remarked, in deference to the cases
of *Cannel* vs. *Buckle*, 2 *Peere Wms.*, 243; and *Harvy* vs.
*Ashley*, 3 *Atk.*, 615." In this latter case, the opinion of Lord
Hardwicke is clearly expressed in favor of the validity of the
agreement of an infant, when confirmed by his acts after the
disability is removed.   And in the case of *Milner* vs. *Lord
Harewood*, 18 *Ves.*, 259, the sanction of Lord Eldon is given
in the most unqualified terms to the doctrine upon this subject,
as stated in *Durnford* vs. *Lane,* it being in the former case
held, that a female infant was not bound by an agreement to
settle her real estate upon marriage, if she did not when of
age choose to ratify it, and that nothing but her own act, after
the period of majority, could make it binding upon her.   The
opinion of the Master of Rolls, in the case of *Simson* vs. *Jones,*
13 *Cond. Eng. Ch. Rep.*, 78, is in accordance with the pre-
vious cases, in reference to the capacity of the infant to con-
firm the settlement after attaining the required age.   In pro-
nouncing against the settlement in that case, he said a good
title could not be made under it, "unless by the confirmation
of the wife after the age of twenty-one."

I take it, therefore, to be quite clear, that though a female infant has not the capacity to bind *her own real estate* by a marriage settlement, that nevertheless she may or may not give it validity by her acts, or by express confirmation, when the disability ceases to exist, and that, therefore, such settlements cannot be regarded as purely and absolutely void.

Supposing this to be the true doctrine, and it would seem to follow necessarily that the settlement of the 11th of February, 1835, so far as the real estate of Mrs. Stephenson is concerned, cannot be allowed to stand, it having been executed by her during her minority, and she having died before attaining her full age, or having done or having been capable of doing any act to give it validity. But conceding the settlement to be voidable merely, and to require some act of dissent or disaffirmance to destroy its efficacy, it is material to inquire whether these exceptants are in a condition to entitle them to avoid it, they being the brothers and sisters, and children of brothers and sisters of the whole blood of Mrs. Stephenson.

It is very certain that Mrs. Stephenson, who died under coverture, and a minor, was not herself in a situation requiring or enabling her to avoid the settlement, and her infant child, who died but a few weeks after its birth, was equally incapable of doing so, and if these parties are not permitted to avoid it, then it follows that the settlement must stand, and all the consequences resulting from regarding it as a valid instrument must ensue.

These parties, by their exceptions filed on the 15th of November, 1839, contest the validity of the settlement, and by their petitions filed on the 30th of September, 1846, the fund being then and still under the control of the Court, expressly disaffirm the deed, and claim the fund in opposition to it. And it is and must be conceded, that George B. Stephenson, the surviving husband of Augusta, and father of her infant child, can have no claim to the money now in controversy, unless the deed in question is to be regarded as a valid and operative instrument. If it be not, then, as the estate descended to the infant child on the part of the mother, it must, upon her death,

go to the relatives on the part of the mother (who are the exceptants), to the exclusion of the father, according to the provisions of the first section of the Act of 1820, ch. 191. It can only be, by considering the deed valid, and that the child takes as a purchaser under it, that the father can claim, the child upon that hypothesis constituting a new root or stock of inheritance, and the father, under the circumstances of the case, by the terms of the same Act, taking as heir to his child.

These exceptants are privies in blood to the mother and the child, and standing in that relation, they seem to have the clear right to set aside the deed in question, the rule being, that the infant himself, or his representatives, privies in blood, can avoid a voidable conveyance made by the infant. *Whittingham's Case*, 8 *Rep.*, 42. If the infant does not live to confirm or adopt at full age the feoffment which he made during his minority, it may be set aside by persons who are privy to him in blood, but not by a person who is privy in estate only. *McPherson on Infants*, 465.

My opinion, therefore, is that, viewing this settlement as one of those voidable acts which must be disaffirmed in order to set it aside, that these exceptants, who are privy in blood, are competent to do so, and that, having availed themselves of that privilege, the deed is to be disregarded, and the estate then descending to the heirs on the part of the mother, the father can take no more than his curtesy interest, and that it appears from the proceedings he has already received.

And I am further of opinion, that upon the true construction of the Act of Assembly, and upon the authority of the case of *Porter* vs. *Askew*, 11 *G. & J.*, 346, the residue of the proceeds of these sales resulting from that portion of the real estate sold which belonged to Mrs. Stephenson, must be distributed among the uncles and aunts of her infant child, to the exclusion of the children of uncles and aunts, if any there be. The case will be sent to the Auditor, to state an account accordingly.

LATROBE, for the Husband.
McMAHON, for Exceptants.