ROBERT PORTER AND OTHERS *vs.* MARY ASKEW—*December,* 1840.

On the 15th April 1839, the county court passed an order, confirming the account of the auditor, distributing the proceeds of land, from which the parties interested took an appeal.  The original decree was for a sale, from which no appeal had been taken; it was passed on the 15th May 1835.  The Court of Appeals refused to examine into the validity of the original decree.

The act of 1820, ch. 191, sec. 4, declares that there shall be no representation among collaterals, after brothers and sisters children.  The judicial interpre-

tation given to that language, which is borrowed from the statute of distributions of 22 *Car.* 2, *ch.* 10,is, that brothers and sisters children, mean the children of the brothers and sisters of the intestate, and that there shall be no representation among collaterals after the children of the brothers and sisters of the intestate, who died seized.

L died seized, intestate and without issue; she left A, an aunt, and children of uncles and aunts. *Held*, that under the act of 1820, ch. 191, sec. 4, A was entitled to the whole estate.

APPEAL from the equity side of *Baltimore* County Court.

On the 26th November 1834, *Mary Askew*, *Robert Porter* and others, filed their bill alleging, that *Elizabeth Long* of *Baltimore* county, was in her life time seized and possessed of a certain tract of land in said county, assigned to her as the only daughter and legal representative of a certain *Elizabeth Long*, one of the sisters of *John Mercer Porter*, whose land was partitioned, &c.; that the said *E. L.* died so seized and possessed in November 1834, intestate and without issue; that said *Elizabeth Long*, also, died seized of other land, which descended to her, on the part of her *father*, *John Long*, and which complainants are advised, vests in her, the said *Elizabeth's* heirs, of the blood of her father; that her other real estate will descend to and vest in her heirs, on the part of her mother, who was one of the sisters of *John Mercer Porter;* that said *J. M. P.* left as his heirs at law, *E. Long*, the present intestate, she being the daughter of a deceased sister; *Mary Askew* one of present complainants, another sister; *Jesse; Benjamin; Robert;* and *Peregrine Porter*, brothers, and *Rebecca Porter* a sister. That *Robert* is dead, since the death of *J. M. P.*, leaving complainants, *Robert* and *Benjamin* his heirs at law; that the bill then proceeded to show the death of all the other brothers and sisters of *J. M. P.*, except *Mary Askew* the complainant, and the issue by them respectfully left, and to show who are the heirs at law of the said *E. L.* on the part of, and of the blood of the mother, who are entitled to the two lots which descended from her—first, *Mary Askew* in her own right, as aunt of the intestate, *E. L.*, *Robert Porter of Robert*, and *Benjamin Porter of Robert*, &c., in right of and by representation from their deceased father *Robert*, an uncle of the said *Elizabeth*

*Long* the intestate; also the children of *Jesse Porter*, another uncle of *Elizabeth Long;* and also the children of an aunt of said *E. L.*, &c.   The bill then alleged, that owing to the particular situation of the said two lots or parcels of ground, and the numbers of heirs that have an interest in the same, it is impossible to make a division or partition of the same without a most serious loss and injury; that the improvements on said pieces of property are in a most ruinous condition, and that a sale of the same would be much to the interest and advantage of the parties, but that owing to the number of said heirs, and their various interests, no sale can be agreed upon among them.   Prayers for subpœnas for a sale of the said two lots, and the proceeds to be brought into this court, to be distributed among the said heirs, according to their respective rights and interests, and for further relief.

 · The defendants answered the bill, admitting the facts—a commission was issued to divide the land.   The commissioners reported, that it was incapable of division, and *Baltimore* county court, on the 15th May 1835, decreed a sale, with directions to bring the proceeds into court to be distributed under the direction of the court.   The trustee proceeded to a sale, which was finally ratified on the 7th October 1835.

The cause was referred to the auditor, who under the instructions of the complainant's (*Mary Askew's*) solicitor, stated one account allowing her the whole proceeds of the land—the second account, allowed her one-fifth, and distributed the remaining four-fifths among the other parties in the cause.

On the 18 thMarch 1837, *Mary Askew* petitioned the county court, alleging, that since the decree in this cause she had been advised, that she was the sole heir of *Elizabeth Long,* she being an aunt of the deceased, and the other parties named in the bill being cousins, and the act of descents having this clause,viz: "there shall be no representation among collaterals after brothers and sisters children."   Prayer that the first account may be confirmed, and the proceeds ordered to be paid to petitioner.

 On the 15th April 1839, the county court (ARCHER, C. J.,

MAGRUDER and PURVIANCE, A. J.,) confirmed account No. 1, and distributed the proceeds accordingly; from which order and distribution the other parties appealed to this court.

The cause was argued before STEPHEN, DORSEY, and SPENCE, J.

By R. JOHNSON for the appellants, and
By J. V. L. McMAHON for the appellee.

SPENCE, J., delivered the opinion of the court.

In this cause a decree was passed by the county court of *Baltimore* county, for the sale of the real estate of a certain *Elizabeth Long*, who died intestate, seized of real estate, for the purpose of making distribution of the same, among her heirs at law. After the ratification of the sale, made by the trustee, *Mary Askew*, the appellee filed her petition to the court, alleging, that she was in law entitled to the whole fund arising from said sale. The cause was referred to the auditor, who stated two accounts; in one of which he awarded the whole fund, after deducting costs and charges, to *Mary Askew*, the appellee. In the second account, he allowed to *Mary Askew*, one-fifth part, and distributed the other four-fifths, among the children and heirs of *Jesse Porter*, *Robert Porter*, *Rebecca Stone* and *Wesley Porter*. *Baltimore* county court confirmed the auditor's statement and account No. 1, which awarded the whole fund to *Mary Askew*, and ordered the proceeds to be applied accordingly, and overruled account No. 2. From this order of the court, confirming the auditor's account, No. 1, and overruling account No. 2, this appeal is taken.

The first question to be decided in this cause is, who of these claimants are in law entitled to this fund, thus made by the sale of the real estate of *Elizabeth Long.?* This question arises under, and must be determined by, the provisions of the act of Assembly, passed December 1820, ch. 191, entitled "an act to amend and reduce into one system the laws to direct descents."

The bill states that *Elizabeth Long* at her death, left as her heirs at law, *Mary Askew*, an aunt, and *Robert Porter* and

others, children of uncles, and an aunt of *Elizabeth Long*, her heirs at law on the part of the mother of the said *Elizabeth*, and that the estate descended to said *Elizabeth*, on the part of her mother.

The question then is, does the aunt of the intestate, under the act of 1820, ch. 191, take the whole real estate, to the exclusion of the children of uncles and aunts of the intestate, or do they come in by representation, and participate with the aunt in the fund?

The fourth section of the act of 1820, ch. 191, contains this restriction, "*provided that there be no representation admitted among collaterals, after brothers and sisters children.*"

It must have been the intention of the Legislature, by the language employed in this section, to limit representation among collaterals, to the children of brothers and sisters of the intestate. It seems to us that this interpretation is not only the rational and sound one, but that to give it any other, would almost entirely defeat its end, namely, to limit and restrict. We are the more persuaded of the correctness of this construction, because other tribunals have drawn the same conclusion, from language, if not identically the same, so nearly so, that we are unable to detect any substantial discrepancy.

The *Stat.* 22, *Car.* 2, *ch.* 10, commonly called the statute of distribution, contains this language, "*provided there shall be no representation amongst collaterals after brothers and sisters children.*"

The courts in *England* have again, and again decided, that the meaning of this language is, the children of the brothers and sisters of the intestate. And we are at a loss to conceive of a more perfect analogy between any two cases, than this case, and the case of *Bowers vs. Littlewood*, 1 *P. Wms.* 593, presents.

The appellants' solicitor insisted in the argument of this case, that if *Mary Askew* was the sole heir, and only person entitled to the estate of *Elizabeth Long*, the intestate, the court had no jurisdiction to pass the original decree to sell the real estate, it not being a case in which the court had such jurisdiction

under the provisions of the act of 1820, ch. 191, or any of its supplements; and that therefore, this decree was a nullity; of the correctness of this conclusion, notwithstanding the ingenious argument of the appellants' solicitor, we are not persuaded. This question is not now before this court. No appeal having been taken from the original decree, the legal correctness of that decree is not now before us for revision.

DECREE AFFIRMED WITH COSTS.