EVALYN S. TOME, Purchaser, *vs.* H. ARTHUR STUMP, Committee of Lewis W. Abrahams.

*Habitual Drunkard—Waiver of Jury Trial—Sale of Land by Committee—Order Nisi—Appeal.*

Code Art. 16, sec. 47 (Act of 1894, ch. 474), provides, that when a person is found by a jury upon inquisition to be an habitual drunkard, incapable of taking care of himself or his property, the Court shall have the same power over his person and property as it exercises over persons adjudged to be lunatics. It is also provided that a person may dispense with legal proceedings to establish the fact that he is an habitual drunkard and appoint his own committee, with the approval of the Court. *Held*, that where a person charged upon petition with being an habitual drunkard voluntarily appears, admits the charge, and appoints his own committee with the approval

of the Court, such committee may be authorized to sell and convey the property of such party.

A person charged with being an habitual drunkard dispensed with a jury trial and appointed his own committee, as provided by Code, Art. 16, sec. 47. Subsequently, an order of Court directed a private sale of the habitual drunkard's property to the appellant, who had agreed to purchase it. Upon appeal from this order, *Held*, that the validity of the order appointing the committee was not open to review.

Code, Art. 16, sec. 47, authorizes a person charged with being an habitual drunkard to dispense with a jury trial to establish the same, and appoint his own committee, but the mode in which such election and appointment shall be evidenced is not prescribed. *Held*, that the recital in a decree of Court of such election by the person charged, and the appointment of the committee is sufficient evidence of the fact and the same need not be shown by other papers filed in the case.

A committee of an habitual drunkard reported to the Court a private sale of his property, together with a full statement of the terms thereof and asked for authority to make the sale. The purchaser answered the petition, admitting its allegations and consenting to a ratification. Thereupon, an order was passed directing the committee to convey the property to the purchaser upon payment of the purchase money. *Held*, that under the circumstances of this case the petition and answer may be regarded as a consent to the ratification of the sale without an order *nisi*, but that the committee should now ask to have his petition accepted as a report of sale with direction for the usual order *nisi*.

Appeal from an order of the Circuit Court for Cecil County (STUMP, J.)

The cause was submitted to the Court on briefs by:

*P. E. Tome* and *L. M. Haines*, for the appellant.

*Albert Constable* and *H. Arthur Stump*, for the appellee.

PEARCE, J., delivered the opinion of the Court.

The questions to be decided in this case, arise upon appeal from an order or decree of the Circuit Court for Cecil County, in Equity, authorizing and directing H. Arthur Stump, committee of Lewis W. Abrahams, to make private sale of certain real estate of said Abrahams to Evalyn S. Tome, upon the terms and conditions of a pro-

position of purchase made by Mrs. Tome to said committee; and these questions depend mainly upon the construction to be given to chapters 474 and 221 of the Acts of 1894, now codified in *Poe's Supplement*, respectively, as sections 47 and 98 of Art. 16. A brief statement of the facts seems necessary to a proper understanding of any decision to be made, and will facilitate a satisfactory disposition of the appeal.

On June 11th, 1898, the seven children of Lewis W. Abrahams filed their petition under oath, alleging that their father was, and for some considerable time past, had been an habitual drunkard, incapable of the proper management of his estate, and praying for a commission to the Sheriff of Cecil County to inquire whether he was an habitual drunkard as charged. It is shown by the recital of an order, hereafter to be mentioned, that on June 16th Abrahams appeared in person, expressed his desire to dispense with the legal proceedings to establish the charge, and appointed his own committee, to-wit, H. Arthur Stump, subject to the approval of the Court, in accordance with the provisions of sec. 47 of Art. 16. The appellant does not charge that this is not the fact, but she denies that there is any proper or legal evidence of the fact. At this stage of our inquiry, however, we shall assume it to be a fact. On June 16th an order was passed reciting the fact last mentioned, and approving and confirming the appointment of H. Arthur Stump as committee, and requiring him to execute a bond with surety, or sureties, in the penalty of $15,000. On June 17th the prescribed bond was filed, with the Fidelity and Deposit Company as surety, and was duly approved. From this order no appeal has been taken. On July 14th Henry A. Nesbit filed a petition in this case alleging that on April 19th, 1898, by a written agreement between Abrahams and himself, he secured an option to purchase at any time within sixty days thereafter, the whole or any part of the land mentioned in the proceedings, at $100 per acre, conveyance to be made "by good and suf-

ficient deed;" and that on June 13th he duly notified said
Abrahams, in writing, of his acceptance of his said option
on the whole tract, tendering himself ready to pay the pur-
chase money and requesting "an immediate conveyance by
good and sufficient deed." Nesbit further alleged in his
petition that he had no knowledge of these proceedings
until after the passage of the order mentioned, and averred
that Abrahams was not in fact an habitual drunkard; that
said order hindered and delayed the execution of his contract,
and he prayed for the rescission of that order and for leave
to intervene and contest the allegations of the petition.
On June 20th the Court passed an order *nisi* on this peti-
tion, requiring cause to be shown on or before the third
Monday of September, and for service of copy of petition
and order on Abrahams, on Stump, his committee, and on
Albert Constable, solicitor of the original petitioners.

On September 17th Stump filed a petition in the cause
setting forth that on June 16th Nesbit had filed a bill in the
same Court for the specific execution of his above-mentioned
agreement with Abrahams; that subsequently, Nesbit, who
is the brother of Evalyn S. Tome, had assigned to her all
his interest in said agreement of purchase, and that she had
offered to compromise and settle all her rights and claims
under said agreement and option to purchase the whole
tract of 166 acres, by offering to purchase from the com-
mittee and Abrahams, 144 acres at $96 per acre; that such
purchase would be greatly to the interest and advantage of
Abrahams and his family, as the sum obtained, when in-
vested, would yield a much larger income than that derived
from the farm, and they would still retain the residence with
twenty-two acres attached for their use and occupation;
that this sale would avoid vexatious litigation, and that
Abrahams and his family were desirous it should be made.
The prayer of the petition was for authority to make such
sale. On the same day Nesbit and Mrs. Tome filed an ad-
mission of the facts stated in the petition, so far as they
affected them, and their consent to the passage of such de-

cree as might be necessary to procure the relief prayed in the petition. Testimony was taken to support the allegations of the petition (Mrs. Tome's solicitor being present at the taking thereof) and full proof was made. The case was submitted for decree, and the following decree was passed, which it is thought best to transcribe in full:

"Matter submitted for decree of Court.

"The matter of the petition of H. Arthur Stump, committee of Lewis W. Abrahams, filed in the above-entitled cause, on Sept. 17th, 1898, asking authority to sell the real estate or property therein described by metes and bounds, courses and distances, to Evalyn S. Tome, having been submitted to the Court, and the proceeding having been read and considered, and it appearing that proof has been taken, as in the other Chancery cases, as to the value, quantity and condition of said property, and the Court, after considering all the circumstances, deeming it to the interest and advantage of said Lewis W. Abrahams to sell said real estate to said Evalyn S. Tome upon the terms and conditions set forth in said petition, it is thereupon, this 4th day of November, 1898, by the Hon. Frederick Stump, one of the Judges of said Court, and by the authority thereof, adjudged, ordered and decreed, that said H. Arthur Stump, committee as aforesaid, be, and he is hereby authorized, empowered and directed to sell said real estate to said Evalyn S. Tome at private sale upon the terms and conditions set forth in said petition (following added by the Court) and the said committee is hereby directed to convey the said property to said Evalyn S. Tome, upon the payment of the purchase money to him, and not before.

FREDERICK STUMP."

The appellant contends that under this decree the committee cannot give her a good marketable title such as she stipulated for in her proposition of purchase, for three reasons, which are earnestly argued in the brief submitted on her behalf.

The first ground taken is, that under the facts of this case,

the Court was not clothed with power to decree a sale of Abrahams' property, and if this proposition could be sustained, a purchaser could get no title whatever; but of the existence of the power to decree a sale we have not the slightest doubt. In *Hamilton* v. *Traber*, 78 Md. 26, in an opinion by CHIEF JUDGE McSHERRY, in which the history of the power of Courts of Chancery over the estates of persons *non compos mentis*, received an exhaustive examination and careful consideration, it was held that a Court of Equity had no jurisdiction to decree a sale of the estate of a lunatic either for maintenance or support, or to effect a change of investment, until the lunacy had been established by the inquisition of a jury, and a committee had been appointed according to law to take charge of his person and estate. This is still the law *as to lunatics*, who, for obvious reasons not necessary to be stated, are not permitted to dispense with legal proceedings, to establish the lunacy, as habitual drunkards are, by section 47 of Art. 16, allowed to do, to establish the fact of habitual drunkenness. By secs. 98 and 99, as amended, sales, leases and surrenders of leases may be decreed for the purpose of changing investment, without any process or order of publication, but the application must still be made by the committee, who can only be appointed as heretofore after the lunacy is established by the inquisition of a jury. In order to harmonize all these amended sections, the requirement of appearance and answer of defendant was stricken out in sec. 100 as amended, and for some reason not made apparent, the power to decree a sale for the payment of debts—without being satisfied that it would be to the advantage of the estate of the lunatic to discharge such debts, which power had been first granted by the Act of 1833, ch. 150—was abrogated. It was also attempted in sec. 98 as amended, to give the same effect to any decrees or orders theretofore passed for the sales of property of lunatics, as if passed after the passage of the amended Act, but this was promptly declared in *Willis* v. *Hodson*, 79 Md. 327, to be inoperative and void.

The proceedings in the case of habitual drunkards were enacted by chapter 71 of 1888 in the precise terms in which they stand under sec. 47 of *Poe's Supplement* (Act of 1894, ch. 474), except that thereby those addicted to opium, cocoaine, morphine, or any other drug or intoxicant, were subjected to its operation. The argument in behalf of the appellant is ·that by Sec. 47 of Art. 16, "the rules of law and proceedings now applicable to the property of lunatics," are not in terms made applicable to cases of persons who dispense with legal proceedings and appoint their own committee, and that they cannot be extended to such cases by implication; that the most which can be claimed is, that where *a jury finds one to be an habitual drunkard, and incapable of taking care of himself*, that then the Court is invested with the same power over his person and estate as over that of a lunatic so found; but that one who (though so authorized by the statute) dispenses with legal proceedings to establish the charge of habitual drunkenness and appoints his own committee with the approval of the Court, is neither adjudged an habitual drunkard, nor confessed as one, and that as he is by the statute conceded capacity to dispense with legal proceedings to prove the charge; to appoint a committee; to select a reformatory institution; and to agree as to ·the period during which he may be required to remain there, that he is not on the footing of a lunatic, and the rules and proceedings applicable to lunatics were not designed by the Legislature to apply to him. To whom, then, are they to apply? Let the language of the Act answer. "To the cases of persons declared to be habitual drunkards under the provisions of this section (*i. e., the whole section*), except when herein otherwise directed." ·What is the form and character of declaration provided by the Act? Either by the finding of a jury on proof, or by confession of the party dispensing with the legal proceedings through which proof is taken and the result announced. The sole distinction is between voluntary and involuntary declaration—and both, under the provisions of the Act, are

equally binding.  In no case does the *Court* find or declare *the fact*.  Its office is simply to appoint a committee for one so declared by the finding of the jury, or to approve the selection of a committee by one who has been so declared by his own confession, in the manner prescribed by the statute.  To give color to her contention, the appellant is driven to argue that even where one has been found *by a jury* to be an habitual drunkard and incapable of taking care of himself, that *one* of the rules and proceedings applicable to lunatics, *not excepted* by the statute, which makes *all* rules applicable, cannot be availed of by the Court. Where, in the section, has it been "otherwise directed?" There is no magic in the *mere* collocation of the clauses of a section, or the sections of an Act, and if the clause in question, instead of appearing as it does in the middle of the section, had been placed at its close, or had constituted a separate section, it would have had no wider application than it has as it now stands in this section.  If it had been designed to limit its application, as contended, it could have been, and naturally would have been, accomplished by the insertion of three words, after the word "declared," so as to read, "declared by a jury."  We repeat, therefore, that we have no doubt of the power to decree a sale of this property under the provisions of secs. 47 and 98 of Art. 16.

The second ground of objection is that there is no evidence in the record that Abrahams ever appeared before the Court, dispensed with legal proceedings, and appointed his committee subject to the approval of the Court; that the order of June 16th was therefore a nullity, which did not divest Abrahams of his property, and that this order is now open for review, under Art. 5, sec. 26, of the Code. Section 24 of Art. 5 allows an appeal from any final order or decree.  Sec. 25 also allows an appeal from certain orders or proceedings specified therein, and not final in their nature.  Sec. 26 provides that on appeal from any final order, all previous orders passed in the cause may be reviewed, *unless an appeal was taken* under section 25, which

clearly limits the right of review to those previous orders specified in sec. 25. Now the order of June 16th, appointing a committee, was a final order, fixing the status of Abrahams, and is not one of those specified in sec. 25, and can consequently be reviewed in the Court only on appeal taken directly from it (*Porter* v. *Askew*, 11 G. & J. 346; *Wylie* v. *Johnson*, 29 Md. 303), and the only appeal prayed is limited to the order of November 4th authorizing and directing the private sale to Mrs. Tome. The order of June 16th is therefore not open to review. But if it were, we think it proper to say we should sustain its validity. The statute does not require the election to dispense with legal proceedings, and the nomination or appointment of a committee to be put in writing, nor does it prescribe any mode in which it shall be evidenced. Equity Rules 2 and 4, relied on by appellant, cannot be subjected to the construction claimed for them. The Clerk has filed all the papers pertaining to the case, so far as we are advised, and has made proper docket entries thereof. In *Taylor* v. *Clemson*, 11 Clark and Finnelley, 640–641, to which we are referred in appellee's brief, objection was made to an inquisition of a jury of condemnation on the ground that it did not show the parties had disagreed, without which a jury could not legally act. LORD BROUGHAM said: "It cannot be doubted that where a Court of limited jurisdiction assumes to proceed, its judgment must set forth such facts as show that it has jurisdiction and must also show in what respect it has jurisdiction. * * * It is to be observed, however, that the mere impaneling a jury and instituting an inquiry seems a sufficient evidence of disagreement. It is necessary the jurisdiction should appear, but there is no *particular form* in which it must be made to appear. The Court above, which has to examine, and may control, the inferior Court, must be enabled, somehow or other, to see that there is jurisdiction, such jurisdiction as will support the proceeding, but in what way it shall see, is not material, provided it does so see." The act of *appearing in*

*Court* and nominating a committee is one which could not be performed without the personal knowledge of the Court or Judge and his recital in a decree of *such fact* must import, here and everywhere, absolute verity. There is no analogy between the present case and the case of *Johnson* v. *Robertson*, 31 Md. 490, where it was held that the averment or recital in a decree, that an order of publication had been duly published, did not supply the want of the certificate of publication required by long-established practice, and as to which there can be no just presumption that the Court had the actual knowledge, which must be presumed in the present case. It may be that it would be wise to establish, by rule of Court, a practice to require such election and nomination to be put in writing, and to be filed in the case, but in the absence of such rule, we think the recital of the order is satisfactory evidence of jurisdiction.

The third ground of objection is, that even though the Court may have had the power to order the sale, the decree has directed conveyance without any report of sale, and subsequent ratification after notice given, and is for this reason premature, irregular and void. But we do not understand such to be the character and necessary effect of the order. The form of decree in use in this State for the sale of land— approved in *Alexander's Chancery Practice*—directs the trustee to report any sale to the Court for ratification, and defers conveyance until ratification and payment of the whole purchase money; while the order in question omits any direction to report the sale proposed and sought to be accepted, as well as any reference to ratification thereof.

Sec. 101 of Art 16 expressly provides that no sale, lease or surrender of a lease of the property, real or personal, of a person *non compos mentis*, shall be valid, unless the same shall be reported to and confirmed by the Court, and Rule 21 of the Circuit Court for Cecil County (embodied in the diminution record), which has the binding force of law on the Court, contains a similar general provision as to sales

under decrees, except where consent is given in writing, where there are no infant parties to the cause.

But it is impossible to read the petition of Stump, the answer of Nesbit and Mrs. Tome, and the order of Court thereon, without perceiving that the parties all regarded the petition as performing the office of a report of sale. The petition was under oath, as reports of sale are required to be, and it set out in advance, every fact pertaining to the sale, as fully and clearly as a subsequent formal report could have done. The only parties interested were the committee, who represented Abrahams, and Mrs. Tome, the purchaser. The Court, and each of these parties, was as fully informed of every term and condition of sale as they could have been by any order *nisi.* No one else could object to the sale, unless perhaps Abrahams himself, upon allegation of fraud or unfairness on the part of his committee. The petition and answer were both in writing, and taken together, it would seem that they might, in the peculiar circumstances of the case, be fairly regarded as a consent within Rule 21 of the Circuit Court, to ratification without order *nisi.* Especially is this the case in view of the fact that on June 13th, Nesbit, who it cannot be doubted was acting throughout as his sister's agent, after holding an option on this tract for nearly 60 days, notified Abrahams of his acceptance and requested that he immediately convey him the land by a good and sufficient deed, and tendered himself ready to pay the purchase money on delivery of deed. It seems reasonably clear, therefore, that the appellant did not require time or opportunity to examine and determine the title, but rather that she desired to have it guaranteed before she accepted it.

The better course, however, for the committee, we think, would have been, to embody in the petition a prayer for leave to have the petition filed and accepted as a report of of sale, and to incorporate such leave in the order of Court, with direction for the usual order *nisi,* and we think the committee should now file such petition and obtain such

order.   If the appellant conceives herself injured in any manner thereby, or if she desires to recede from her bargain, and is at liberty to do so, she will have an opportunity to except to the ratification of the sale, and to appeal from any order thereon adverse to her interest.

If the committee on obtaining the order now appealed from had treated the petition as a report of sale, and had caused the usual order *nisi* to be published, and the appellant had excepted to the ratification of the sale on the ground we are now considering, we cannot doubt the Court below would have ratified the sale, and that such course would have been the proper one.   This being our view, it follows that the order appealed from is free from reversible error, and it will therefore be affirmed, without relaxing, in the slighest degree, any of the safeguards provided by law, for the maintenance of the rights of property.

> *Decree affirmed with costs to the appellee above and below, and cause remanded for further proceedings in conformity with this opinion.*

(Decided March 16th, 1899).