# CHARLES E. POPE *vs.* THE BALTIMORE WARE-HOUSE COMPANY.

*Marshalling of Assets—Interest—Appeal.*

A was a creditor of an insolvent debtor with a junior lien on certain tin plate, and was entitled to have marshalled for his benefit various securities held by B, a prior creditor with a prior lien on the same goods. One of these securities was a mortgage executed to B by the insolvent, the validity of which was contested by the insolvent's trustees. B accepted an offer to compromise the litigation relating to the mortgage after notifying A that he might continue the litigation concerning it at his own expense which offer A refused. *Held,* that under these circumstances B was not bound to persevere in the litigation concerning the mortgage, but was entitled to compromise his claim, and did not thereby forfeit his right to appropriate the other securities held by him to the payment of his debt.

Upon a case stated a decree was made adjudging that A was not entitled to a first lien on certain goods and that he was a junior creditor of an insolvent debtor and as such entitled to have marshalled various securities held by B, as pledgee of the same debtor. Subsequently another decree was made adjudging that B was authorized to compromise certain litigation respecting one of the securities held by him without impairing his right to apply the other securities to the payment of his debt. *Held,* that upon an appeal from the second decree the questions decided by the first decree are not open to review.

When a vendor by a wrongful stoppage *in transitu* of goods sold to an insolvent, who had pledged the bills of lading, prevents delivery of the goods, he is liable for interest on their value.

Appeal from the Circuit Court No. 2, of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*Robert P. Graham* (with whom was *James E. Ingram, Jr.,* on the brief ), for the appellant.

*Charles McH. Howard,* for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This is a special case stated under the 47th general equity rule. Code, Art. 16, sec. 184. ·

The facts to enable the Court to decide the questions presented and raised on the record are contained in two statements of facts, submitted to the Circuit Court No. 2, of Baltimore City. One was filed on the 7th of May, 1903, and the other (a supplemental statement) was filed on the 14th of February, 1905.

The facts as stated in the record, are these: The William Fait Company, a corporation engaged in the business of canning and packing fruits and vegetables, in the city of Baltimore, purchased of the appellant two lots of tin plate, and delivered to him two promissory notes one for the sum of $1,857.35 and the other for $1,806.49, for the purchase price.

The plate was shipped in two lots, one on the 4th and the other on the 17th of September, 1902, from the factory of the appellant in Steubenville, Ohio, to the purchaser in Baltimore, via Wheeling and the Lake Erie, and the Baltimore and Ohio Railroad Companies. The two bills of lading were issued by the railroad companies for these shipments, to the order of the appellant, were endorsed by him, and sent to the purchaser.

Subsequently, the bills of lading were on the 6th and 19th of September, 1902, assigned to the appellee Warehouse Company, as collateral security for the payment of two notes, of $1,625 each, for money loaned, and for any other liability or indebtedness, then existing or may hereafter be contracted or incurred, by the appellant.

At the time of the loans, and without the knowledge of the Warehouse Company, the Fait Company was insolvent and upon application, receivers were appointed, on the 26th of September, to take charge of and to wind up its business.

Afterwards, it was adjudicated a bankrupt by the District Court of the United States and the appellee trustees were appointed trustees in bankruptcy.

The tin plate had not been delivered at the time of the fail-

ure, and it was stopped in transit by the appellant. There-upon, the plaintiff and defendants entered into an agreement to submit the matters here in controversy to the determination of the Court. A bond of indemnity was executed in lieu of the fund, and the goods were returned to the shipper.

It also appears, that the total indebtedness of the Fait Company to the appellee Warehouse, at the time of its failure was $183,847.56 and a part of the indebtedness was secured by collaterals pledged by notes similar to the two set out in the record. The sum of $12,750, of the debt, was secured by a mortgage of a leasehold lot, on which stood the plant of the Fait Company, subject to a ground rent of $2,700 per year.

On the 22nd of March, 1904, the Circuit Court No. 2, of Baltimore City, decided and determined the questions at issue and submitted, by the rendition of the following decree:

1. That the plaintiff was not entitled to the stoppage in *transitu* and return of the two consignments of tin plate described in these proceedings as against the lien of the defendant, the Baltimore Warehouse Company, thereon, for the repayment of the two loans respectively made upon the bills of lading therefor, as set forth in these proceedings.

2. That the plaintiff was also not entitled to any legal or equitable right of stoppage in *transitu* over said goods or over the surplus resulting therefrom after repaying said two loans out of the proceeds thereof, as against the lien of the defendant, the Baltimore Warehouse Company thereon, to secure all other liabilities of said William Fait Company to it, which had accrued at the time at which it, the said Baltimore Warehouse Company, was first notified of the attempted stoppage of said goods by the plaintiff.

3. That the plaintiff was, however, entitled to an equitable right of stoppage in *transitu* over said goods or the proceeds thereof as against the William Fait Company, and its receivers, and the defendants, its trustees in bankruptcy, so far as the same can be asserted and enforced without prejudice to the aforesaid prior rights of the Baltimore Warehouse Company; and is further entitled to have the various securities held by

said Baltimore Warehouse Company marshalled, so far as such marshalling may be effected without prejudicing the said prior rights of the Baltimore Warehouse Company as pledgee, so that any surplus resulting from the proceeds of all of the property held by said Baltimore Warehouse Company as collateral for the liabilities of said William Fait Company to it (other than said two consignments of tin plate) after payment in full of all such other liabilities, which surplus would otherwise be payable to the said William Fait Company, its receivers, or trustees in bankruptcy, shall be applied to the payment of the two loans made upon said two bills of lading, thereby releasing said two consignments or the proceeds thereof for the benefit of said plaintiff, in full or *pro tanto*.

4. The Court reserves the right to pass such further orders as may be necessary or proper for the carrying out and execution of this decree, and retains jurisdiction of the case for the purpose of determining the amounts, if any, to be paid by the plaintiff under the bond of indemnity referred to in these proceedings, according as it shall hereafter appear that there is a surplus or deficit resulting from the said other collateral held by said Baltimore Warehouse Company as security for indebtedness due it by said William Fait Company.

There was no appeal from this decree and being a final decree or one in the nature of a final decree it is not open for revision or review on this appeal. The questions there presented were fully determined, and the rights of the parties thereunder were fixed. The law as established by the decree constitutes the law of the case. *Tome* v. *Stump*, 89 Md. 264; *Hopper* v. *Smyser*, 90 Md. 379; *Gardiner* v. *Baltimore City*, 96 Md. 382.

We come, then, to the questions presented by the supplemental agreed statement of facts, in so far as they were not defined and settled by the first decree.

By the supplemental statement of facts filed on the 14th of February, 1905, it appears that a part of the indebtedness of the Fait Company to the Warehouse Company consisted of a balance of $12,750 due on a mortgage of certain leasehold

property dated the second day of September, 1902. The validity of the mortgage was attacked and disputed, and the property conveyed thereby was by agreement, sold by the trustees in bankruptcy under a decree of Court, free and clear of the mortgage. The proceeds of sale, the sum of $7,500, the trustees were directed to hold, to represent the property, subject to the further order of the Court. All questions as to the validity of the mortgage and the priorities of payment out of the proceeds of sale, were also reserved for the future determination of the Court.

It further appears, that the total balance of indebtedness due by the Fait Company to the Warehouse Company, after an application of the proceeds of sale of all the collaterals held as security except the mortgage claim, the bond of indemnity of the appellants and a disputed claim against the Baltimore and Ohio Railroad Company, amounted to the sum of $9,317.41.

On the 22nd of October, 1904, the appellee Warehouse Company submitted to the appellant the following proposition of compromise as to the mortgage debt.

"It is claimed by the trustees that the mortgage in question was given to secure a pre-existing indebtedness and is preferential and voidable. They also make the claim that the mortgage, though dated September 2nd, 1902, was not acknowledged until September 25th, 1902, and that therefore, although actually delivered on the earlier date, it is defective for that reason.

The trustees in bankruptcy have offered to compromise this litigation with the Baltimore Warehouse Company by paying it $3,000.00 out of the $7,500.00, so set aside, upon its releasing the balance of the fund.

The present situation as regards the state of account between the Baltimore Warehouse Company and Fait Company is as follows:

Including the proceeds of your tin pledged, and applying all other collaterals of the Fait Company held by it, upon the indebtedness, there would remain a balance of about $5,500.00

to be paid out of the mortgage money, in order to repay all of the indebtedness of the Fait Company to the Baltimore Warehouse Company. If, therefore, the Baltimore Warehouse Company accepts the proposition of the trustees, it will lose about $2,500.00 and there will be no equity to release your clients tin plate.

If the Baltimore Warehouse Company should get the entire $7,500.00, now deposited subject to the order of the bankrupt Court, there would be about $2,000.00, applicable to release your clients tin plate *pro tanto.*

The Baltimore Warehouse Company is willing to accept this offer of compromise; but before so doing it realizes that as your rights are to some extent involved also, your clients should be given the opportunity to fight the matter if they prefer to do so.

If, therefore, your clients are willing to pay the Baltimore Company the sum of $3,000.00, the latter will assign to them all its right, title and interest in the fund so deposited in Court; or permit your clients, if they prefer, to continue the litigation for their use in the name of the Baltimore Warehouse Company; but, of course, at your expense.

In making this compromise the Baltimore Warehouse Company would give up $2,500.00, of its own money, and does not feel that the doctrine of marshalling of securities would require it to continue a litigation for the benefit of your clients, when it is willing to compromise the same by giving up so large a portion of its own claim."

This proposition was declined by the appellant. The Warehouse Company, however, accepted the compromise and credited the sum of $3,000 on the debt, leaving a balance due it of $6,317.41, with interest thereon.

It is admitted, that even if the full amount of the claim ($1,447.50) of the Warehouse Company is recovered against the railroad company, it will not reduce the indebtedness to such an extent as to release the claim under the bond of indemnity given by the appellant.

Under these facts, the Circuit Court No. 2, of Baltimore

City, held, that the appellee Warehouse Company was entitled to compromise the litigation in which its mortgage claim was involved, and on the 25th day of May, 1905, decreed that the sum of $5,678.25, with interest from October 28th, 1902, be paid by the appellant to the Warehouse Company in satisfaction of the bond of indemnity mentioned herein.    And it is from this decree that an appeal has been taken.

The real question to be considered by us, and the one upon which the decision of the case must turn, is the right of the appellee Warehouse Company to compromise its mortgage claim and its effect upon the marshalling of the securities directed by the first decree.

It is contended upon the part of the appellant, that the appellee had no right to compromise this suit and thereby deprive him of $4,500 relinquished by reason of the compromise, and in so doing they released *pro tanto* their claim upon the tin plate and the bond of indemnity.

The rule in equity as to marshalling of securities has been established by numerous decisions of the Courts.

In *General Insurance Co.* v. *U. S. Insurance Co.*, 10 Md. 528, it is said, the securities or assets can never be marshalled to the prejudice of the creditor or so as to suspend or put in peril his claim, or upon any other terms than giving him entire satisfaction.    The creditor who calls for it, must show that the right of his co-creditor will neither be endangered nor injuriously delayed, for if he fails to do so he can have no other benefit than a subrogation of his right or the being allowed to stand in his place.    And it must be clear that the creditor can sustain no loss, nor be in any way delayed, or have his claim subjected to any additional peril.

In *Kidder* v. *Page*, 48 N. H. 382, the Court held, that the general principle of equity, that where a creditor who has a right of recourse against two different funds, has acted in such a manner as to put one of them beyond his own reach, with full knowledge, that his debt cannot be satisfied out of the other fund without injury to the interests of third persons, will be held to have forfeited his right to the second, by the aban-

donment of the first, can only apply when the creditor's right to resort to both funds is clear, and not seriously disputed and when the remedies available for reaching and applying the funds are reasonably prompt and efficient. In that case, there was a controversy as to a right to certain mortgaged property, and the' litigation was compromised, under somewhat similar circumstances to those here, and the Court said, it would have been inequitable to have compelled the trustee, in order to gratify the plaintiffs, to persevere in a litigation which might be protracted and the result of which could not be certain. The plaintiffs, not having offered to assist, or indemnify the trustee in his suit to recover the value of the mortgaged goods, are in no position to complain of his compromise of that suit.

And Mr. Sheldon, in his work on subrogation distinctly says, that a settlement of a contested litigation made in good faith, whereby a prior creditor receives less than its value fro m the primary fund, will not interfere with the prosecution of his right to the secondary fund.

Applying then, the general and well settled principles enunciated by the decisions just cited, to the facts of this case, we do not see upon what legal ground the appellant's contention can rest, or be supported.

The *status* or position of the appellant was fixed and determined by the first decree as that of a junior creditor and entitled to have the various securities marshalled, subject to the prior rights of the paramount creditor, the Warehouse Company. .The mortgage was disputed and contested for defective execution and upon the ground that it was a security for an antecedent debt and amounted to a preference. By the decree of the District Court of the United States for the District of Maryland, all questions as to its validity were reserved for the future determination of the Court.

The appellee's right therefore to the fund derived from the mortgage sale, was by no means clear and certain, and could only be realized by continuing a dubious litigation.

But apart from this, it appears, that before accepting the

offer of compromise, an opportunity was given the appellant to continue the litigation at their expense, or if they preferred, to pay the sum of $3,000 to the appellee, and the latter would "assign to them all its right, title, and interest in the fund so deposited in Court."

Under the facts, thus stated, we think, it is obvious, that the appellee was entitled to compromise the litigation in the manner, it did, and was in no way bound to carry on the suit for the benefit of the appellant, when he refused and declined the proposition submitted by the appellee.

The allowance of interest on the valuation of the tin plate, by the decree, from the 28th of October, 1902, was correct.

The appellant prevented the delivery of the tin plate and had the use of the amount of its valuation during this period.

Finding no error in the decree it will be affirmed.

*Decree affirmed, with costs.*

(Decided January 24th, 1906.)