## EXCHANGE NAT. BANK OF TULSA v. ROGERS.

No. 17519. Opinion Filed Feb. 28, 1928.

Rehearing Denied June 19, 1928.

(Syllabus.)

Pledges—Right of Bank as Assignee of Doubtful Judgment Held as Security for Loan to Compromise Judgment Without Consent of Subsequent Assignee of an Interest.

A bank holding an assignment of a judgment as security for a loan, the party against whom such judgment was rendered being about to appeal from such judgment and such bank, acting in good faith under competent legal advice, honestly believes that said judgment will, in all probability, be reversed on appeal and rendered for the opposite party, may, as against a subsequent assignee whose assignment provides that such bank shall pay his claim out of the proceeds of the assigned judgment provided the full amount of such judgment is collected, and in that case only, compromise such judgment for less than its claim without the consent of such subsequent assignee and without liability to him.

Commissioners' Opinion, Division No. 2.

Error from Common Pleas Court, Tulsa County; R. D. Hudson, Judge.

Action by M. S. Rogers against the Exchange National Bank of Tulsa, Okla. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

John Y. Murry and Chas. E. Bush, for plaintiff in error.

H. B. Martin and Christy Russell, for defendant in error.

HERR, C. This is a suit instituted in the common pleas court of Tulsa county by M. S. Rogers against the Exchange National Bank of Tulsa to recover damages because of an alleged wrongful compromise of a judgment rendered in the United States District Court for the Eastern District of Oklahoma, in favor of H. A. Pressey against the city of Tulsa. This judgment was for the sum of $13,196. Plaintiff prevailed at the trial. To reverse the judgment, defendant appeals to this court.

Both plaintiff and defendant held assignments to the claim out of which grew the

131-5

judgment. It is conceded that plaintiff's assignment was subsequent to the assignment of defendant.

It appears that in the month of October, 1918, the city of Tulsa employed H. A. Pressey, a hydraulic engineer, to make a preliminary survey for a water supply for the city, and entered into a written contract, signed by the mayor, whereby it was agreed that said Pressey was to receive the sum of $12,000 for such services.

While engaged in this work, Pressey borrowed $6,000 from defendant bank, and as security therefor assigned to the said bank the money due and to become due under said contract. The assignment was executed on the 29th day of May, 1919. Sometime in February, 1922, Pressey gave an assignment to the plaintiff herein for the sum of $1,496.80 to be paid out of money due on said contract. Said assignment directed defendant bank to pay same out of any and all sums received by said bank out of the assignment held by it over and above all claims of said bank against Pressey, **provided that the full $12,000 is collected, and only in that case.**

The city of Tulsa was denying liability on the contract and was prepared to appeal from the judgment rendered against it to the United States Circuit Court of Appeals.

The defendant, with the consent of Pressey but against the protest of plaintiff, compromised this judgment for the sum of $8,900, defendant agreeing to pay and did pay out of this sum to Pressey's attorney $750 and to Pressey, himself, the sum of $600, the evidence disclosing that Pressey would not consent to the settlement unless this sum was paid him, the amount of Pressey's indebtedness to the bank being, at said time, including principle and interest, the sum of $9,300.

The assignment to plaintiff herein was served on defendant bank and said defendant had knowledge of said assignment prior to the time said compromise was made. The plaintiff, at all times, objected to said compromise and agreed to assist defendant bank in an effort to sustain said judgment in the appellate court, and agreed to bear his proportionate share of the expenses of appeal.

The city of Tulsa was contending that the contract with Pressey was illegal in that it was not properly executed and that no appropriation had been made to provide funds for payment of the indebtedness created by the contract.

It is disclosed that the compromise agreed

to was made over the protest of the city attorney, who had prior thereto prepared and served the record for appeal.

The evidence further discloses that the bank was advised by its legal department that it was more than probable that the judgment would be reversed on appeal. The attorney who represented Pressey and the bank testified that in his judgment the judgment was very likely to be reversed. The evidence also discloses that the counsel who represented Mr. Rogers, at the time he obtained his judgment against Pressey, and to secure which the assignment was given him, also stated that he was fearful that the case would be reversed on appeal. Counsel who now represents Rogers, however, did not represent him at that time.

The trial court made numerous findings of fact, and it would make this opinion too lengthy to set out the same in detail. The above statement, however, in substance, sets out the facts as found.

In these circumstances, the legal question to be determined is: Had the defendant bank, the prior assignee, with the consent of the assignor, the right to compromise the judgment even though such compromise resulted in precluding the plaintiff, a subsequent assignee, from realizing anything under his assignment? We think this question must be answered in the affirmative.

Under circumstances very similar to the circumstances herein, the Supreme Court of Iowa, in the case of Myer v. Farmers & Traders Bank, 42 N. W. 329, held that such compromise could legally be made. In that case, one Nott held a policy of insurance on a stock of merchandise, which stock was totally destroyed by fire. Nott was indebted to the bank and to secure such indebtedness assigned his claim against the insurance company, under his policy, to the bank. Subsequently, he made another assignment to Sayer & Company, and later, a third assignment to a man by the name of Myer. The assignment to Myer was very similar to the assignment in this case, the same providing that his claim should be paid out of any sum remaining after payment of the claims of the bank and Sayer & Company.

The insurance company contested the claim. The bank, holder of the first assignment, compromised the claim for 50 cents on the dollar. An action was thereafter brought by Myer against the bank for the amount of his claim, contending that the bank had no legal authority to make such compromise and that such act was fraudu-

lent at to him. The court held against this contention, and in sustaining the right of the bank to compromise, used the following language:

"The character and effect of this acceptance must be briefly considered. It was a conditional acceptance to pay out of a particular fund. It contains no contract with plaintiffs other than this conditional acceptance. The bank does not undertake to discharge any duty to protect plaintiffs' rights, and is therefore bound only to discharge the duties imposed by law. Neither does it surrender any rights or priority which it holds under the assignment. The bank was bound to exercise reasonable diligence to collect the full amount of the policy. But if in the exercise of prudence, good faith, and a reasonable degree of intelligence and diligence, it failed to collect a sum in excess of the amount due it, and settled the claim for the amount due it, and no more, it would not be liable to plaintiffs. The assignment was made primarily for the security of the bank, and it was authorized to enforce this security if it did so honestly, and in the exercise of ordinary diligence and intelligence."

See, also, Fant v. Miller and Mayhew (Va. Ct. Ap.) 17 Gratt. 187; Polk v. Baltimore Warehouse Co. (Md.) 62 Atl. 1119; Exeter Bank v. Gordan, 8 N. H. 66. These cases hold that in cases where it is doubtful as to whether or not pledged collateral can be realized upon, the assignee or pledgee, as the case may be, may, when acting in good faith, compromise the claim without the consent of assignor or pledgor.

Counsel cite numerous authorities holding that an assignor, after assigning his claim, cannot effect a settlement without the consent of the assignee; that such assignor impliedly covenants that he will do nothing to prevent the collection of the assigned claim; that the assignee has a vested interest in the thing assigned; that the assignee cannot settle the claim for less than its face value without the consent of the assignor; that the pledging of a thing as collateral security does not pass title in the thing pledged to the pledgee; that the pledgee has no right to sell or dispose of the thing pledged without the consent of the pledgor, and that in the case of a pledge of commercial paper, the pledgee, without the consent of the pledgor, has no right to enter into a compromise and settle the pledged paper for less than due thereon.

These cases fall far short of solving the legal proposition involved in this litigation. The question here presented is: Can a subsequent assignee compel a prior assignee to

litigate, for the benefit of such subsequent assignee, a doubtful claim at the risk and hazard of losing his own claim, when such doubtful claim may be compromised and the claim of the prior assignee thus partially protected? Counsel cite no cases so holding and we have been unable to find any. We believe that the rule in the Iowa case, supra, that a compromise in such circumstances may be made when done in good faith and in the exercise of ordinary diligence and intelligence, is the correct rule. is founded on principle and reason and we so hold.

Especially is this true under the assignment held by the plaintiff in this case. The assignor directed the defendant bank to pay plaintiff's claim, **provided that the full amount of $12,000 is collected, and only in that case.** Why was this proviso placed in the assignment? It was certainly known by all parties at the time of its execution that the city of Tulsa was denying liability under its contract. It must have been contemplated by the parties that circumstances might arise in which it might become advisable to accept a settlement for a lesser sum. The city was liable for the full amount, or it was liable for nothing. There was no middle ground. There is no theory upon which a judgment could have been legally rendered against the city for a lesser sum. A compromise, therefore, must have been contemplated by the parties at the time. It was evidently contemplated that circumstances might arise under which, in the exercise of a sound discretion, a lesser sum than $12,000 might be accepted in settlement of the claim. Plaintiff accepted the assignment coupled with this condition, and he is bound by its terms.

Great stress is laid by counsel upon the fact that defendant paid Pressey $600 in order to obtain his consent to the settlement. This, it is claimed, was in fraud of plaintiff's rights, and the court so held as a matter of law.

The same contention was made in the Iowa case, supra, and, while the court said that the evidence was insufficient to show that an additional payment was made to Nott in order to obtain his consent to the settlement, even though such had been the fact, the court said:

"Surely, the insurance company had a right to pay Nott money to withdraw his opposition to the settlement."

We fail to see where this act shows bad faith on the part of the defendant bank. The fact that the bank was willing to accept $1,000 less than was due it in order to make the settlement, to our mind, tends to show that the bank was honestly convinced that upon appeal there was great danger of the judgment being reversed and its claim lost. If, in good faith, it so believed, the bank had the right to pay Pressey in order to obtain the withdrawal of his opposition to the settlement.

In our opinion, the court was in error in holding that such action, in itself, constitutes fraud in law. It is clear to our mind that defendant honestly believed that an appeal was quite likely to result in the loss of its entire claim. It was so advised by its counsel, and this view was concurred in at that time by counsel of all the interested parties.

We do not wish to be understood as saying that the judgment herein mentioned was in fact erroneously rendered against the city of Tulsa, or that the same would have been reversed on appeal, but we do say, realizing the uncertainty of litigation, that the bank was not chargeable in law with the duty and burden of further litigating the case for the benefit of the plaintiff, if it honestly and in good faith believed that such litigation would, in all probability, result in the loss of its entire claim.

Under the very terms of the assignment, the only duty defendant owed the plaintiff was the exercise of reasonable diligence in the collection of the judgment. If, however, in good faith, and in the exercise of a reasonable degree of intelligence and diligence, it arrived at the conclusion that such judgment could not be collected, and for this reason, in order to partially save its own claim, compromised the judgment, it would not be liable to the plaintiff.

In discussing the proviso contained in this assignment, counsel cite the cases of Pritchard v. McLeod, 205 Fed. 24; White v. American Law Book Co., 106 Okla. 166, 233 Pac. 426, and cases from other states wherein the following rule is announced:

"It is elementary that where payment is to be made out of a specific fund, which it is the duty of the obligated party to create, or where the time of payment is dependent upon a condition subject to his control, he cannot escape performance by willfully neglecting to discharge his duty."

These authorities are not decisive of this case unless it be first determined that defendant owed plaintiff the duty, at all hazard, to continue the litigation even at the risk of losing its own claim. We hold that the law does not charge the defendant bank with such a burden.

Under the undisputed facts, the court erred in rendering judgment in favor of the plaintiff.

Judgment should be reversed and the cause remanded, with instructions to render judgment in favor of defendant.

BENNETT, TEEHEE, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 31 Cyc. p. 851.